Robert Edward JOHNSON and Aaron Gilleylen, Petitioners,

v.

Perry M. JOHNSON, Warden, Southern Michigan Prison, Respondent.

No. G–229–72 C.A.

United States District Court, W. D. Michigan S. D.

April 9, 1974.

Murphy & Neff, Grand Rapids, Mich., for petitioners; William B. Murphy, Grand Rapids, Mich., of counsel.

Frank J. Kelley, Atty. Gen., Lansing, Mich., for respondent.

## OPINION AND ORDER

FOX, Chief Judge.

Petitioners Edward Johnson and Aaron Gilleylen have filed a Joint Application for a Writ of Habeas Corpus seeking release from prison. The application was originally and properly filed in the United States District Court for the Eastern District of Michigan, but was transferred to the Western District since an evidentiary hearing appeared necessary and the witnesses were located in Grand Rapids.

Both petitioners were charged with carrying concealed weapons without a license, M.S.A. Sec. 28.424, M.C.L.A. Sec. 750.227, and with armed robbery, M.S.A. Sec. 28.797, M.C.L.A. Sec. 750.529. Petitioners were jointly tried and convicted by a jury on the concealed weapons charge in March 1969.. They were jointly tried and convicted by a jury on the armed robbery charge in May 1969. Sentences of two to five and ten to twenty years were imposed. On appeal, the Michigan Court of Appeals affirmed both convictions, 31 Mich.App. 416, 188 N.W.2d 131 (1971). The petitioners filed a Delayed Application for Leave to Appeal to the Supreme Court of Michigan, which was denied. The petitioners have exhausted their state remedies and are properly before this court.

Petitioners challenge the validity of their custody under both convictions on a variety of grounds. An evidentiary hearing was held on November 1, 1973. The following constitutes the court's conclusions on the Application for a Writ of Habeas Corpus relative to the petitioners' imprisonment on the charge of armed robbery. The issues raised by the petitioners' Application relative to the concealed weapons charge are the subject of a separate order and opinion.

Petitioners normally reside in Cleveland, Ohio. On the evening of November 8, 1968, the petitioners were arrested in Grand Rapids, Michigan, for carrying concealed weapons, were placed in jail, and have not since been released. While in jail, the Grand Rapids police identified Johnson's fingerprints as those found on the cashbox of the Fairview Pharmacy, located in Walker, Michigan, shortly after the store had been robbed by four men on the night of October 10, 1968. Subsequently, the Michigan State Police said that the fingerprints did not match. Meanwhile, however, the Grand Rapids police placed Johnson and Gilleylen in at least two line-ups before witnesses to the Fairview robbery. At the first line-up, held on November 14, 1968, allegedly without benefit of counsel, some witnesses identified Johnson and some identified Gilleylen—none identified both—as having been among the robbers. A warrant was issued on November 15, they were

arrested on November 16, and arraigned on November 18. Subsequently, on December 18, 1968, a second line-up was held. On May 5 and 6, 1969, the petitioners were tried. The only evidence against them was the identifications made by the witnesses to the robbery. Except for one witness who testified that he had never been to a line-up relative to the robbery, all the witnesses testified that they had picked one or the other of the petitioners out of a police line-up. The witnesses also gave in-court identifications. The defense counsel objected to none of this.

The petitioners' only defense was an alibi. They asserted that on the day of the robbery they were with friends in Cleveland watching the World Series. However, only one witness, Johnson's girlfriend, testified for the defense even though several others had been subpoenaed. These other witnesses, all from Cleveland, were present on the first day of the trial, May 5, but were not called to testify. At the close of the first day of trial, the judge noted that the subpoenas would extend to a second day, and specifically informed those under subpoena that they would be required to return at 9:00 A.M. the next day. Trial Tr. at 151–152. However, on the morning of May 6 it appeared that all the petitioners' alibi witnesses except Johnson's girlfriend had returned to Cleveland. While there is no direct evidence in the record as to why the crucial witnesses did not appear, there is indirect evidence that the witnesses thought they had been released by the defense attorney. After talking with their witnesses back in Cleveland, the petitioners charged that their defense attorney had allowed the witnesses to go. However, the attorney denied this and the judge accepted his denial. Id. at 164–167. Although there may be any one of a number of reasons why these witnesses skipped, the whole episode may have been an unfortunate misunderstanding.

At any rate, Johnson's girlfriend having testified that Johnson was in Cleveland on October 10, the defense counsel attempted to rest his case. Id. at 168. Subsequently, the defense counsel informed the court:

"Your Honor, the respondents have asked that there be an adjournment at this time for the purpose of bringing in additional witnesses to establish their alibi. They are not present in Court today but they feel that they could be here tomorrow, if the Court would grant them such an adjournment." Id. at 170.

The Court denied the motion. Id. at 170–171. During the closing arguments, the prosecutor told the jury:

"There has been no showing, other than one witness, alibi witness, one of four that was supposed to come in here and testify and she turns out to be the girlfriend of one of the respondents involved. Where are the rest? She is looking out for her sweetheart." Id. at 180.

The Michigan Court of Appeals stated that the petitioners' requested continuance to recall the missing out-of-state witnesses would have resulted in an unreasonable delay of the trial, and held that the trial judge did not abuse his discretion in denying the motion. Furthermore, on review of all the circumstances the Court of Appeals found that the trial court's refusal to delay the trial had not resulted in injustice. 188 N.W. 2d at 136.

■ The issue before this court on the petitioners' Application for a Writ of Habeas Corpus is whether the petitioners were unconstitutionally deprived of their rights to have compulsory process for obtaining witnesses in their favor and to have a fair trial within the meaning of the Sixth and Fourteenth Amendments to the United States Constitution.[1]

---

1. This particular issue is not well pleaded in the petitioners' Application. However, pro se Applications are to be liberally construed. The Attorney General elected to stand upon the opinion of the Michigan Court of Appeals, which did contain a discussion of the issue, as noted above.

The Fourteenth Amendment's grant of a right to due process of law guarantees at a minimum a fair trial in every criminal prosecution. The Supreme Court has been unanimous in its conclusion that the right to a fair trial encompasses the right of a criminal defendant to present the testimony of witnesses in his own behalf. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and Harlan, J., concurring, Id., 388 U.S. at 23. In the Washington case, the Supreme Court made the Sixth Amendment's right of each criminal defendant to compulsory process for obtaining witnesses on his own behalf binding upon the states. The Court said:

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." 388 U.S. at 19.

In the absence of a guilty plea, a fair trial is an absolute requisite of due process. However, in particular cases, individual elements of the ideal model of the fair criminal trial are subject to qualifications by competing constitutional provisions and by concessions to practicality made necessary by the complexity of the criminal process and by the fallibility of men and institutions. Thus, the Sixth Amendment's right of compulsory process must give way to the subpoenaed witness' personal Fifth Amendment right against self-incrimination. When a witness sought by a defendant is in a foreign country, totally beyond the reach of the court's process, or cannot be found, the defendant cannot successfully claim a Sixth Amendment right not to be tried at all.

See United States v. Murphy, 413 F.2d 1129, 1139 (6th Cir. 1969). Where witnesses are difficult to obtain, the defendant's Sixth Amendment right to a speedy trial and the prosecution's similar interest must be taken into account.

In part because of the nature of the right and the context in which it is asserted, it is not always clear just how far the constitutional guarantee of compulsory process extends. However, the words of the Sixth Amendment, the English and colonial experience which prompted its adoption, and the Washington opinion make it clear that something more than the absence of statutory exclusions and the mere *pro forma* issuance of subpoenas is required. The right of "compulsory" process implies that the prosecution on request and the trial courts have some duty to apply the state's resources and power in appropriate circumstances to ensure a fair trial, especially where the defendant is indigent.

This conception is certainly consonant with long-established principles of due process. The prosecution's constitutional duty to disclose exculpatory material statements of witnesses on the defendant's request, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963); Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), is clearly within the sphere of influence of the Sixth Amendment's compulsory process guarantee. Similarly, the Sixth Amendment's right of confrontation, which is applicable to the states, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), requires the state to bear the burden of producing witnesses. In Michigan, the prosecution has long been required to produce essential res gestae witnesses in fairness to the accused, Hurd v. People, 25 Mich. 404, 416–417 (1872); Maher v. People, 10 Mich. 212, 225–226 (1862), and the modern statutory codification of the rule, M.C.L.A. Sec. 767.40, has been held to require the prosecution to endorse the name of a res gestae witness on the information and produce

him even though he may give testimony favorable to the accused. People v. Harrison, 44 Mich.App. 578, 205 N.W.2d 900, 910 (1973). The prosecutor must also use due diligence to find res gestae witnesses who are not readily available, Id., 205 N.W.2d at 912, and must invoke statutory procedures to procure such witnesses' attendance where they are out of the state, Id., People v. Nieto, 33 Mich.App. 535, 190 N.W.2d 579 (1971). Compare the Sixth Amendment's right to counsel, e. g., Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and the indigent prisoner's right to a transcript under certain circumstances, e. g., Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Under certain limited circumstances, the Michigan trial judge may order the state to pay the fees and expenses to enable an indigent defendant to bring material witnesses in his behalf. M.C.L.A. 775.15.

■ In this case, the only defense which Johnson and Gilleylen had was their alibi. When they were not given the opportunity to present their alibi witnesses, they were effectively denied the right to present their defense. There is no showing that the petitioners in any way contributed to the absence of their witnesses. The trial judge found that the defense counsel did not release the witnesses. The petitioners themselves can hardly be said to have waived reliance on these witnesses, as they were the ones who prompted their attorney to move for an adjournment. See Braswell v. Wainwright, 463 F.2d 1148, 1154 (5th Cir. 1972). The missing witnesses were known to be in Cleveland, Trial Tr. at 167, and the defendants offered to produce them once again for the trial the next day.

The issue, then, is whether, under the circumstances, and in light of the Sixth Amendment's guarantee of compulsory process, the trial judge's denial of the defendants' motion for a day's continuance to enable them to attempt to secure the presence of their crucial alibi witnesses denied them a fair trial. The most important consideration is that the defendants were effectively denied the opportunity to present their only defense. The Sixth Amendment was adopted to foreclose the government's application of English rules which prevented certain criminal defendants from calling witnesses in their own behalf. Washington, supra, 388 U.S. at 19–20. The defendants requested only a day's delay, and implicitly acknowledged that they had a substantial burden of producing their witnesses within that time. In addition, however, the defense witnesses had disobeyed a clear and explicit order of the court. In light of the compulsory process guarantee and the importance of these witnesses, the court ought to have directed the prosecutor to look into this possible contempt of the court's process, with a view to redressing its disastrous effect by expeditiously securing the witnesses' presence if at all possible. The defendants' trial was apparently not a trial which commanded great public attention, requiring extraordinary measures such as the sequestration of the jury. The jury had been sent home on the night of May 5 to return on May 6. There is simply nothing in the record which suggests that the interests of the prosecution outweighed the right of the defendants to have a reasonable opportunity to present their only defense.

Thus, the court concludes that under the special circumstances of this case, the defendants were denied a fair trial within the meaning of the relevant constitutional provisions. This is not to say that the defendants had a right to an outright dismissal because some of their witnesses could not be obtained. Nor did the defendants have a right to a prolonged delay. But the crucial right to present a defense as comprehended by the Sixth Amendment required something more than what was done here.

Although the petitioners have made other claims of deprivation of constitutional rights, some of which appear on the face of the record to be substantial

or meritorious, the court does not reach these claims in view of the disposition made of the case.

It is therefore ordered that the Writ of Habeas Corpus be granted. However the Writ of Habeas Corpus is suspended for a period of 75 days to afford the state an opportunity to retry defendants. If the state does not retry defendants within 75 days, the suspension is ended and the defendants shall be released by the mandate of the Writ of Habeas Corpus.