**UNITED STATES of America, Plaintiff,**

v.

**Vicente ALONZO–MIRANDA, Defendant.**

**Crim. No. S–77–5.**

United States District Court,
E. D. California.

March 1, 1977.

Dwayne Keyes, U.S. Atty., Donald H. Heller, Asst. U.S. Atty., Sacramento, Cal., for plaintiff.

Michael B. Read, Sacramento, Cal., for defendant.

OPINION

MacBRIDE, Chief Judge.

The defendant in this case was charged in a one count indictment with a violation of Title 8 U.S.C. § 1326, which prohibits the re-entry into the United States of a deport-

---

ed alien without the prior approval of the Attorney General. The defendant has filed motions to suppress the arrest and to dismiss the indictment. At the suppression hearing held in this case on February 9, 1977, the following facts were elicited: On December 17, 1976 at approximately 12:30 a. m., the defendant and four[1] other persons were driving in a vehicle in Lodi, California. Officer T. C. Martin of the Lodi Police Department, suspecting that the driver was drunk, pulled the vehicle over after he noticed it weaving and repeatedly crossing over the center divider. The driver of the car could not produce a driver's license or any other form of identification. The officer then requested identification from the other passengers, including the defendant, however, no identification was produced. Officer Martin then arrested the defendant, one other passenger, and the driver of the car, who were all of Mexican descent, for investigation of immigration violations. The three were then taken to the Lodi Police Headquarters and booked. Officer Martin, and Officer Flanders, the booking officer, testified that the three aliens were very intoxicated. The defendant admitted that he and the other Mexican passenger had been drinking, however, he firmly maintained that the driver had not been drinking, and in fact, never drank. No sobriety test of any type had been administered by the police to any of the three aliens. The defendant also testified that the car was neither weaving nor proceeding at an excessive speed when it was stopped by Officer Martin.[2]

It is undisputed that the other Mexican passenger arrested, as well as the Mexican driver of the vehicle, were deported to Mexico by immigration officials before defendant or his counsel was afforded an opportunity to question them about the events surrounding the arrest. The government and the defendant agree that these two persons are now unavailable as witnesses.

The defendant moves to suppress the arrest and all evidence flowing from it, and to dismiss the indictment. Defendant claims that by the government's act of deporting two key witnesses to his arrest, he cannot effectively present his motion to suppress and hence, is denied his Fifth Amendment right to due process, and his Sixth Amendment right to have compulsory process for obtaining favorable witnesses. Defendant relies on *United States v. Mendez-Rodriguez*, 450 F.2d 1 (9th Cir. 1971).

In *Mendez-Rodriguez*, the defendant was arrested while transporting six illegal aliens in his car. Three of the six aliens were deported to Mexico before the defendant or his counsel could interview them, while the remaining three aliens were retained as material witnesses for the trial of the defendant. The defendant's motion to dismiss the indictment was denied, and he was convicted of conspiracy to smuggle aliens into the United States and of transporting illegal aliens. On appeal, the Ninth Circuit reversed the judgment of conviction and remanded the case to the District Court, holding that the defendant's Fifth and Sixth Amendment rights had been violated by the government's act of deporting the three aliens before the defendant had interviewed them (450 F.2d at 5). In so holding, the court in *Mendez-Rodriguez* stressed the importance of the defendant's Sixth Amendment right to have compulsory process available to him in order to obtain favor-

---

**1.** The evidence on this point at the suppression hearing was conflicting. Officer Martin testified that in addition to the three aliens, there were two American citizens in the car at the time of the defendant's arrest. The defendant, on the other hand, testified that the two Americans had been dropped off before the time of the arrest, and hence, only the three aliens were in the car when it was stopped. This dispute in the evidence is of little moment, however, to a determination of the issues before this court. (See, page 927, *infra.*)

**2.** The defendant's testimony on this point is highly suspect. The defendant contradicted himself a number of times on the question of whether or not he was asleep up until the car actually was pulled over. The unreliability of the defendant's testimony merely underscores the need for the testimony of the two deported alien witnesses to the circumstances surrounding the arrest.

able witnesses. Citing the United States Supreme Court opinion in *Washington v. Texas,* 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967), the court stated:

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." 450 F.2d at 4–5.

The court in *Mendez-Rodriguez* reasoned that the defendant was deprived of this due process right when the Government's act of deportation of the aliens put the witnesses outside the scope of the subpoena power of the district court. (450 F.2d at 5).

The Government here argues that *Mendez-Rodriguez* only applies to the situation in which the deported aliens were witnesses to the actual crime itself, and were, therefore, important in determining the defendant's guilt or innocence. In the case at bar, the Government further argues, *Mendez-Rodriguez* would not apply since the deported alien witnesses were not witnesses to the crime charged, but rather, to the circumstances surrounding the defendant's arrest.

The issue of whether the due process rationale of *Mendez-Rodriguez* should be extended to the instant situation appears to be one of first impression in the Ninth Circuit. This court, for the reasons which are stated below, refuses to give the holding of *Mendez-Rodriguez* the limited application urged upon this court by the Government.

*Mendez-Rodriguez* and the cases which have followed it clearly indicate that the rationale for the *Mendez-Rodriguez* rule is one of fairness and due process based on the notion that the government cannot, by its unilateral actions, be permitted to deprive the defendant of his right to properly defend himself. In the case of *United States v. Tsutagawa,* 500 F.2d 420 (9th Cir. 1974), the Ninth Circuit articulated the rationale of the *Mendez-Rodriguez* holding:

> "The thrust of *Mendez-Rodriguez* is to prevent the basic unfairness of allowing the government to determine which witnesses will not help either side and then to release those witnesses, for all practical purposes, beyond the reach of the defendant. [citation omitted]. The vice lies in the unfettered ability of the government to make the decision unilaterally. The Sixth Amendment guarantees a defendant the right to subpoena favorable witnesses. [citation omitted]. Here, the government placed witnesses, who may have been favorable to the appellees, outside the power of our courts to require attendance. In *Mendez-Rodriguez* we held that this same act denied the accused due process because it interfered with his ability to defend himself from criminal charges. [citation omitted]. A defendant has the right to formulate his defense uninhibited by government conduct that, in effect, prevents him from interviewing witnesses who may be involved and from determining whether he will subpoena and call them in his defense." 500 F.2d at 423.

Clearly, in the instant case, one of the defenses available to the defendant is to challenge the validity of his arrest. There is no allegation by the Government that there was "reasonable suspicion" to originally detain the defendant as an illegal alien within the purview of *United States v. Brignoni-Ponce,* 422 U.S. 873, 884–85, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The Government concedes that the sole reason that the defendant was originally detained was because of Officer Martin's belief that the driver of the car in which the defendant was riding, was intoxicated. Whether the car in which the defendant was riding was in fact weaving or speeding is essential to a determination of whether there existed probable cause or reasonable suspicion to justify stopping the defendant. Two material witnesses to the manner in which the

car was proceeding on the night of the arrest are the alien driver and the second alien passenger. Neither of these two witnesses are available to the defendant because of the government's act of deportation. This situation is precisely the type which the court sought to remedy in *Mendez-Rodriguez.* The Government here by its unilateral action has deprived the defendant of a right to subpoena witnesses who might be helpful to his defense. The notion is one of due process, which applies equally to a defense relating to the defendant's guilt or innocence, or to a defense relating to the lawfulness of the defendant's arrest.

The Government has argued that since the defendant can interview the two other non-Mexican passengers still in the Lodi area,[3] there is no due process violation. This contention is without merit. The Ninth Circuit in *United States v. Tsutagawa, supra,* expressly rejected a similar argument by the Government, stating:

> "*Mendez-Rodriguez* prevents the government from determining who will be a helpful witness for the accused. The accused (or here, prospective accused) has the right to make that decision for himself, either by interviewing the potential alien witnesses or by waiving the right to do so." 500 F.2d at 423.

It is true that the defendant here has not made a showing that the deported alien witnesses' testimony would be favorable.[4] However, the court in *Mendez-Rodriguez* directly addressed this issue, and stated that such a factor is of no importance:

> "Appellant concedes that he is unable to show that the witnesses in question would have offered testimony favorable to the defense. Such statement is understandable in view of the fact that appellant was, by Government action, deprived of the opportunity to interview said wit-

nesses. Appellant couldn't know what these witnesses might say, if anything. We are in the same position as the appellant. We decline to indulge in any speculation that the interviews would, or would not, have been fruitful to the defense." 450 F.2d at 5.

The court is also very mindful of the additional expense that today's ruling will impose on the government. This is a regrettable necessity, however, in view of the due process requirements articulated by the court in *Mendez-Rodriguez,* and *Tsutagawa.*

In summary, therefore, in light of the holdings in *Mendez-Rodriguez* and *Tustagawa,* this court must conclude that the constitutional requirements of the Fifth and Sixth Amendments have not been met in this case. Accordingly, defendant's motion to suppress is granted, and pursuant to request of the United States Attorney at the time of this court's oral ruling on this matter, the indictment is dismissed.

IT IS SO ORDERED.

---

**3.** See note 1, *supra.*

**4.** It appears that the testimony of the one alien passenger would be of little or no value to the defendant, since according to the defendant's own testimony, this alien had been drinking very heavily, and was asleep until the car was

pulled over. (But see, note 2, *supra* ). The testimony of the driver, however, would be highly probative to this court's determination whether he had in fact been drinking that night, and whether he was driving in an erratic manner when stopped by Officer Martin.