Alonzo SINGLETON, Appellant,

v.

The Honorable Louis J. LEFKOWITZ, New York State Attorney General, Appellee.

No. 769, Docket 78–2008.

United States Court of Appeals, Second Circuit.

Argued March 28, 1978.

Decided Sept. 12, 1978.

Mansfield, Circuit Judge, filed a dissenting opinion.

Philip L. Weinstein, New York City (William Hellerstein, New York City, of counsel), for appellant.

Lillian Z. Cohen, Asst. Atty. Gen. (Samuel Hirshowitz, First Asst. Atty. Gen., Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, of counsel), for appellee.

Before FEINBERG, MANSFIELD and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from an order of the United States District Court for the Southern District of New York, Charles E. Stewart, Jr., Judge, denying a petition for a writ of habeas corpus. Appellant was convicted of criminal possession of a dangerous drug in the fourth degree [1] after a jury trial before Justice Hyman Korn in the Supreme Court, New York County, Central Narcotics Part. He was given an indeterminate sentence with a three-year maximum. The conviction was affirmed by the Appellate Division, *People v. Singleton*, 50 A.D.2d 939, 377 N.Y.S.2d 197 (2d Dep't 1975) (memorandum opinion), and by the New York Court of Appeals, one judge dissenting. *People v. Singleton*, 41 N.Y.2d 402, 393 N.Y.S.2d 353, 361 N.E.2d 1003, (1977).

Appellant contends on appeal, as he has throughout the state and federal proceedings below,[2] that he was deprived of his Sixth Amendment right to compulsory process and his Fourteenth Amendment right to due process by the state trial court's refusal to grant him a short adjournment. The adjournment was necessary to secure the presence of a vital witness who was unavailable because the State had improperly released him from custody after his arrest pursuant to a material witness order. The district court rejected these constitutional claims and accordingly denied habeas corpus relief. *United States ex rel. Singleton v. Lefkowitz*, No. 77 Civ. 1264 (S.D.N.Y., dated Nov. 18, 1977). We reverse.

## I. FACTS

Appellant was the front seat passenger and David Knowles was the back seat passenger of an automobile operated by Joseph Powell. When they were stopped by two New York City police officers for a license and registration check on September 24, 1971, the three occupants got out. While Officer Braga was checking the vehicle

---

1. N.Y.Penal Law § 220.15, repealed in 1973, read in pertinent part:

 A person is guilty of criminal possession of a dangerous drug in the fourth degree when he knowingly and unlawfully possesses a narcotic drug:
 1. With intent to sell the same; or
 2. Consisting of . . . (b) one or more preparations, compounds, mixtures or substances of an aggregate weight of (i) one-eighth ounce or more, containing any of the respective alkaloids or salts of heroin, morphine or cocaine . . . .

 Criminal possession of a dangerous drug in the fourth degree is a class D felony.
 1969 N.Y.Laws, ch. 788, § 3.

2. Singleton also unsuccessfully raised a Fourth Amendment claim in the state proceedings. It is not in issue on this appeal.

identification number on the hinge of the driver's front door, Officer Santiago observed Knowles, the back seat passenger, attempt to reach over Officer Braga's shoulder toward the interior of the car. At that point Officer Santiago grabbed Knowles away from the vehicle and aimed his flashlight inside the car. He observed an open manila envelope on top of the console between the front seats. The envelope contained visible white powder, believed to be cocaine. The officer confiscated the envelope and arrested all three occupants. A subsequent search revealed a closed envelope containing white powder located between the driver's seat and the console. The envelopes actually held in aggregate three-eighths of an ounce of heroin. Appellant was released after arraignment but failed to appear as scheduled on October 1, 1971, when a bench warrant was issued by the criminal court.

On January 6, 1972, appellant, Powell, and Knowles were indicted by a Queens County grand jury for criminal possession of a dangerous drug in the fourth degree. Another bench warrant was issued by the Supreme Court, New York County, since appellant still had not appeared. On March 9, 1972, Powell was acquitted after a trial. On October 10, 1972, Knowles pleaded guilty to criminal possession of a dangerous drug in the sixth degree, then a misdemeanor,[3] and on October 25 he was sentenced to time served.

Appellant appeared pursuant to his bench warrant on February 23, 1973. Prior to the introduction of evidence, his attorney, Mr. Fabricant, revealed to the court that Knowles had stated at the time of his guilty plea "that the drugs belonged to Joseph Powell and [Knowles] knew that because he saw Joseph Powell buy the drugs and there was no implication at all of Mr. Singleton." Defense counsel further indicated that he had subpoenaed both Powell and Knowles, and that if Knowles could not be located counsel would move to introduce Knowles' plea statement as a declaration against penal interest.

Trial began on August 22, 1973, after a suppression hearing in early August. The prosecution rested on August 27, 1973, at which time Mr. Fabricant requested a continuance because neither codefendant had appeared in response to the subpoenas. An overnight continuance was granted, and that afternoon, according to Fabricant, Singleton's wife and brother went to see Knowles in Brooklyn. After they stressed the importance of his testimony, he promised to be present the following day at two o'clock in the afternoon.[4]

When Knowles still did not appear, counsel was granted a second overnight continuance. In addition, the trial judge, who obviously recognized the importance of Knowles' testimony,[5] granted a material witness order authorizing Knowles' arrest. The court warned the defense, however, that the trial would proceed the following day with or without the codefendants because the judge's term at the Special Nar-

---

**3.** N.Y.Penal Law § 220.05, prior to its repeal in 1973, provided:

> A person is guilty of criminal possession of a dangerous drug in the sixth degree when he knowingly and unlawfully possesses a dangerous drug.
>
> Criminal possession of a dangerous drug in the sixth degree is a class A misdemeanor. 1969 N.Y.Laws, ch. 788, § 1.

**4.** Counsel, Singleton's wife and brother had previously spoken to Powell's sister on many occasions, emphasizing the importance of her brother's coming to testify. Powell, however, was apparently never located.

**5.** Other than Singleton's presence as a passenger in the car where the heroin was found, there was no evidence linking him to the drugs.

Consequently, the prosecutor was forced to rely solely on the presumption provided by N.Y.Penal Law § 220.25(1) (substantially unchanged under current law, see N.Y.Penal Law § 200.25(1) (McKinney Supp.1977)), which stated in part:

> The presence of a dangerous drug in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such drug was found
> . . . . .

Appellant's defense therefore necessitated that he negate the presumption. However, his attorney counseled against his testimony because of a prior narcotics conviction.

cotics Court was to end and he also had a doctor's appointment on Friday of that week. The order was signed on Tuesday, August 28, in the early afternoon and on the same evening Knowles was arrested at his home, the address listed in the arrest authorization, by a patrolman of the 79th Precinct in Brooklyn. A police officer who then telephoned an assistant district attorney of Kings County was told by him that the material witness order was defective. Thereupon Knowles was released from custody. When this was brought to Justice Korn's attention on Wednesday morning, August 29, the judge spoke to the Assistant District Attorney who admitted the error. The judge granted an adjournment until 2:00 p. m. to enable Fabricant and the district attorney to locate Knowles. When they returned to court unsuccessful, Justice Korn refused to grant a further adjournment. Defense counsel rested without producing any evidence, appellant was convicted, a motion to set aside the verdict was denied, and sentence was imposed.[6]

The New York Court of Appeals held that the trial court did not abuse its discretion or abridge appellant's right to compulsory process in refusing to grant appellant a fourth adjournment. *People v. Singleton, supra,* 41 N.Y.2d at 405–06, 393 N.Y.S.2d at 356–57, 361 N.E.2d at 1005–06. The court first distinguished *People v. Foy,* 32 N.Y.2d 473, 346 N.Y.S.2d 245, 299 N.E.2d 664 (1973), which held it reversible error to deny a short adjournment for the purpose of obtaining material alibi witnesses where they had been identified to the court, could be found within the jurisdiction and the movant had demonstrated diligence and good faith. The Court of Appeals believed that Justice Korn had been "most co-operative and accommodating," unlike the trial judge in *Foy* who "refused, for [his] own convenience, to grant even the briefest of adjournments." *People v. Singleton, supra,*

41 N.Y.2d at 406, 393 N.Y.S.2d at 356, 361 N.E.2d at 1003. "[I]t was hardly an abuse of discretion," concluded the Court of Appeals, "for the court to direct counsel to try the case and not the court's patience." *Id.* Moreover, said the Court of Appeals majority, unlike the case in *Foy,* Singleton, "by absconding from the jurisdiction of the court, brought about his difficulties in not being able to locate the witnesses at the time of the delayed trial." *Id.,* 393 N.Y. S.2d at 357, 361 N.E.2d at 1006. Finally, the Court of Appeals noted that there was doubt as to the "needfulness" of the testimony since the defendant's attorney had informed the court that he did not have the "foggiest idea" whether the testimony would help or hurt appellant.[7] It concluded that "under these circumstances, the defendant should not be allowed to manipulate the Sixth Amendment to avoid due process of law." *Id.*

Dissenting, Judge Fuchsberg urged that the three criteria set forth in *Foy* as requiring an adjournment—that the witness be material, that the moving party not be guilty of neglect, and that the witness will appear at the deferred trial—were met here. *Id.* at 412–13, 393 N.Y.S.2d at 360–61, 361 N.E.2d at 1009–10. He pointed out that "every reasonable expectation was that Knowles' testimony would assist the defense," *id.* at 412, 393 N.Y.S.2d at 360, 361 N.E.2d at 1010, as indicated by defense counsel's reference to Knowles' statement when he pleaded guilty. And he noted that the trial court had implicitly if not explicitly made a finding of materiality when it issued the material witness order. Judge Fuchsberg found "incomprehensible" how Singleton's absence months before had any bearing on the matter, because Knowles would have been available to testify but for his improper release from custody by the police. The dissent also reasoned that Knowles could and would have been produc-

---

**6.** Appellant was released from prison on $2,500 bail on March 1, 1974, pending his appeals and continues to remain at liberty.

**7.** It is true that at the time defense counsel sought continuances, he did not know what the

codefendants would testify to for the obvious reason that they would not cooperate with him. However, he as well as the trial court were well aware of Knowles' plea statements. *See ante* at 4.

ed had a reasonable adjournment been granted, for he was found by the police at his home even after he had twice ignored the subpoenas.

In agreeing with the New York Court of Appeals, the federal district court ruled that Singleton had not shown that the testimony of either coconspirator would be favorable to his defense.[8] This conclusion was partially based on defense counsel's lack of knowledge as to what the witness would testify to, see note 7 & accompanying text supra. Additionally, Judge Stewart

held that Knowles' statement during his plea proceedings would not aid appellant because the fact that Powell purchased the drugs was not alone sufficient to rebut the presumption of knowing possession established by the statute. See note 5 supra.[9] The district court reasoned: "While it may be assumed that Knowles' testimony might have proven Singleton's lack of involvement in the purchase of the drugs, petitioner has made no claim that Knowles or Powell could have testified that Singleton had no knowledge of the presence of the drugs in the automobile."[10] United States ex rel.

---

**8.** We came to a similar conclusion in United States v. Taylor, 562 F.2d 1345, 1361–62 (2d Cir.), cert. denied, 434 U.S. 853, 98 S.Ct. 170, 54 L.Ed.2d 124 (1977). But in that case not only was there no showing of what the witness was expected to say in court, there was not even an indication of what he had said in the past. Here, by contrast, counsel apprised the court of Knowles' previous plea statement.

**9.** While the statute has been upheld in the New York state courts, People v. Leyva, 38 N.Y.2d 160, 379 N.Y.S.2d 30, 341 N.E.2d 546 (1975), and by a federal district court, Leyva v. Superintendent, Green Haven Correctional Facility, 428 F.Supp. 1 (E.D.N.Y.1977), vacated and remanded, 573 F.2d 1292 (2d Cir. 1978), a similar New York statute creating a presumption of possession of firearms was declared unconstitutional in Allen v. County Court, 568 F.2d 998 (2d Cir. 1977), petition for cert. filed, 46 U.S. L.W. 3694 (U.S. May 9, 1978) (No. 77–1554). Since appellant has not raised the issue, we decline to address the presumption's constitutionality at this time.

**10.** This reasoning misconceives the purpose and effect of the statutory presumption as construed by the New York Court of Appeals:

> [T]he presumption is evidentiary and rebuttable, whether by defendant's own testimony or by any other evidence in the case, including the inherent or developed incredibility of the prosecution's own witnesses. A jury is not to be told that it must find defendants guilty if the prosecution proves that they and drugs were present in a car together; it is only to be told that it may so find.
>
> This affords added protection against the possibility that a presumption might operate to direct a verdict . . . .
>
> . . . . .
>
> The purpose of the presumption was to prove the fact of possession, inferential though such proof may be. As such, it formed part of the support for the prosecution's prima facie case. No less than with any other proof of facts offered by a prosecu-

tion, contrary evidence from a defendant does not negate the existence of a prima facie case; rather it presents an alternate set of facts, or inferences from facts, to the jury. The jury then has the right to choose between the two versions.

> None of the defendants here disputed the fact that they were in the car, nor did they argue that drugs were not found in it. These were the two underlying facts which the statute requires be proved before the presumption applies. Once the prosecution had proved them, it was entitled to rely on the presumption as a part of its prima facie case. Defendant Low, by offering the jury additional facts not mentioned in the statute, in effect, asked the jury to draw a different inference [negating possession], one more favorable to him than the one the statute authorizes. So described, the fact inferred under the presumption can be seen to be like any fact which is sought to be proved by circumstantial evidence . . . .

People v. Leyva, supra, 38 N.Y.2d at 167–69, 379 N.Y.S.2d at 36–38, 341 N.E.2d at 550–52 (emphasis in original) (footnote omitted).

To be sure, Knowles did not explicitly state that appellant was unaware of the heroin. But it would not be unreasonable so to infer from his plea statement. And, of course, had appellant been permitted to locate Knowles, the testimony might have revealed Singleton's total lack of involvement with, knowledge of and control over the drugs. Even without clarifying testimony by Knowles, it would have been the jury's function to choose between the two sets of inferences. The jury could have rejected the presumption of knowing possession because it is

> "permissive in nature, permitting, but not requiring, the jury to find the defendant guilty. In effect, the presumption operates as an instruction to the jury that an inference of knowing possession may be drawn from the fact of unexplained presence in an automobile with illegal drugs. This permissible inference may be rebutted by any evidence in the case . . . ."

*Singleton v. Lefkowitz, supra,* No. 77 Civ. 1264, at 5. Finally, the district court held that since Singleton had deliberately absented himself from the court's jurisdiction at a time when the codefendants were "more easily located" appellant was "partly responsible for the difficulty in locating his witnesses." *Id.* at 6.

## II. DISCUSSION

 A defendant has a right "to have compulsory process for obtaining witnesses in his favor." U.S.Const. 'amend. VI. This right is violated when the State arbitrarily denies a defendant the opportunity to put on the stand a witness whose testimony would be relevant and material to his defense. *Washington v. Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The guarantee, of course, encompasses the right to compel the attendance of witnesses favorable to one's defense. *See, e. g., United States v. Taylor,* 562 F.2d 1345, 1361–62 (2d Cir.), *cert. denied,* 434 U.S. 853, 98 S.Ct. 170, 54 L.Ed.2d 124 (1977). The right is not without limitations. We have held that in the absence of some showing of what favorable evidence the witness would provide if compelled to testify, it is not improper to deny a continuance. *Id. See* note 8 *supra.* The question here, simply stated, is whether there was a sufficient showing that Knowles would have provided favorable evidence which was neither cumulative nor irrelevant. We believe that an affirmative answer is compelled. Based on his allocution statements, Knowles' testimony probably would have revealed his presence when Powell bought the drugs and Singleton's lack of involvement in the transaction. If believed by the jury, such evidence could have rebutted the presumption of knowing possession from Singleton's presence in the automobile. *See* note 10 *supra.* Obviously it would not have been conclusive; for the jury might have disbelieved Knowles or concluded that appellant was in knowing possession from his location in the front seat of the automobile near the envelopes. But in view of the presumption of innocence and the State's burden of proving Singleton guilty beyond a reasonable doubt, we cannot say that Knowles' anticipated testimony would not have tended to create doubt about appellant's knowing possession of the drugs.

 Moreover, it is important to note that where the Government has contributed to the unavailability of the witness, the showing of favorable testimony that is required of the defendant is relaxed. *See United States v. Alonzo-Miranda,* 427 F.Supp. 924, 925–26 (E.D.Cal.1977), *citing United States v. Mendez-Rodriquez,* 450 F.2d 1 (9th Cir. 1971). In each of these cases, the Government deported the aliens on whose testimony the defendant relied. The courts held that the Government violated the defendant's Sixth Amendment right to compulsory process and Fifth Amendment right to a fair trial even though the defendant had made no showing that the witnesses' testimony would be favorable to the defense. The courts attributed the lack of evidence to the defendant's inability to interview the witnesses. In this case, the Government did not make Knowles unavailable in the same way, and the dissent relies in part on the defendant's failure to interview Knowles. But Knowles consistently refused to cooperate with the defense, forcing it to take continually more stringent action to secure his testimony. Knowles failed to appear in court to testify even when he was under a subpoena to do so, suggesting the futility of any attempt at an interview. In any event, but for the State's improper release of Knowles, Singleton would not have had to make any showing at all of the anticipated testimony. Prior to Knowles' plea, an interview would not have been possible; after the plea, the defendant relied on the plea statement as evidence of Knowles' testimony. The trial judge apparently found that Knowles' remarks at allo-

---

*Leyva v. Superintendent, Green Haven Correctional Facility, supra,* 428 F.Supp. at 5 (citation omitted). Had the jury discarded the presumption, the State, in all likelihood, would have been unable to prove possession (defined as exercise of dominion or control, N.Y.Penal Law § 10.00(8) (McKinney 1975)), and appellant, in all likelihood, would have been acquitted.

cution were a sufficient indication that his testimony would be in Knowles' favor because he issued the subpoena and the material witness order even after defense counsel conceded that he was unsure just what Knowles' testimony would be. The plea statement was a sufficient basis for obtaining Knowles' arrest, and he would have been present to testify at Singleton's trial had the police not improperly released him. The State's error should not put a heavier burden on appellant.

By analogy to the deportation cases, arguably the State violated Singleton's right to compulsory process when the police released Knowles. This idea finds support in other cases where the State has allegedly interfered with defense witnesses. *See, e. g., Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (intimidation and threats by trial judge); *United States v. Bell*, 165 U.S.App.D.C. 146, 161, 506 F.2d 207, 222 (1974) (conditioning acceptance of codefendants' guilty pleas on their commitment not to testify on defendant's behalf); *United States v. Smith*, 156 U.S.App.D.C. 66, 478 F.2d 976 (1973) (advising witness that he might incriminate himself and be subject to prosecution if he testified); *Bray v. Peyton*, 429 F.2d 500 (4th Cir. 1970) (witness arrested on charge that had previously been dropped).

The State, of course, could have remedied the impairment of Singleton's defense by finding Knowles and presenting him at trial. Thus it is the State, not appellant, that should have borne the burden of searching for him after his improper release from custody. Although the Government generally has no obligation to look for a defendant's witnesses, this rule is conditioned on the "absence of a showing that such witnesses were made unavailable through the suggestion, procurement, or negligence" of

the Government. *United States v. Ballesteros-Acuna*, 527 F.2d 928, 930 (9th Cir. 1975); *Ferrari v. United States*, 244 F.2d 132, 141 (9th Cir.), *cert. denied, Cherpakov v. United States*, 355 U.S. 873, 78 S.Ct. 125, 2 L.Ed.2d 78 (1957). *Cf. Motes v. United States*, 178 U.S. 458, 471–74, 20 S.Ct. 993, 44 L.Ed. 1150 (1900) (error to admit written statement of witness who disappeared because of Government's negligence); *United States ex rel. Parson v. Anderson*, 354 F.Supp. 1060, 1073–74 (D.Del.1972), *aff'd*, 481 F.2d 94 (3d Cir.), *cert. denied*, 414 U.S. 1072, 94 S.Ct. 586, 38 L.Ed.2d 479 (1973) (loss of evidence where the State is "blameless").[11] "The state is . . . responsible for the absence of witnesses [if] it . . . wrongfully causes them to become unavailable. . . . [I]f the state is to blame for the absence of a witness, it must bear the consequences of the loss." Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv.L.Rev. 567, 596 (1978) (footnotes omitted).

Here, the defendant does not rely on the State's improper release of Knowles as the sole basis for his claim that the State violated his Sixth Amendment right to compulsory process. He argues that the trial judge should have continued the trial until Knowles could be found. Granting the continuance was the least that the judge could have done to remedy the error resulting from the State's improper interference with the defendant's witness.[12] It is inappropriate to put the burden on the defendant to obtain the continuance by additional proof that Knowles' testimony would have been favorable. For surely here the trial judge abused his discretion by failing to grant what the Government, the New York Court of Appeals, and the dissent term a "fourth"

11. Even the dissenting opinion in *United States v. Mendez-Rodriguez*, 450 F.2d 1 (9th Cir. 1971), recognized that the court could say that the defendant had been denied due process if there were a "showing of negligence or misconduct on the part of the government." *Id.* at 6 (Kilkenny, J., dissenting).

12. In the deportation cases, where the Government's action caused the witness to become permanently unavailable, the remedy is often to dismiss the indictment. *See United States v. Tsutagawa*, 500 F.2d 420 (9th Cir. 1974); *United States v. Alonzo-Miranda*, 427 F.Supp. 924 (E.D.Cal.1977). Here the lesser sanction of a new trial is appropriate because it is likely that Knowles can be found.

continuance. The trial judge granted the first two continuances in response to increasingly diligent defense efforts to secure Knowles' presence at trial, and the total elapsed time was only a day and a half. These continuances were clearly proper, and the defense would have needed no further continuances if Knowles had remained in custody where he was following upon the second continuance. The judge quite properly declared the third continuance sua sponte in an attempt to remedy the blow to the defense caused by Knowles' release from custody. He erred, however, by granting the continuance only until the afternoon of that trial day instead of until such time as Knowles could be produced in court. The State's action necessitated the continuance, and Singleton is not properly charged with obtaining it. Thus it is inaccurate to speak of appellant's having obtained a third continuance and his seeking a fourth.

Alternatively, it may be argued that once the State improperly released Knowles, thereby negating the benefit to Singleton of the two previous continuances, this so-called fourth continuance was to be treated as though it were the first continuance he sought. So viewed, the case is quite similar to *Johnson v. Johnson,* 375 F.Supp. 872 (W.D.Mich.1974), in which the court held that the denial of petitioners' motion for a day's continuance to enable them to secure the presence of crucial alibi witnesses violated their right of compulsory process. The witnesses there had been present in Grand Rapids, Michigan, on the first day of the trial but went home to Cleveland, Ohio, that night, apparently because of a misunderstanding about whether they had been released. The district court found that there was "no showing that the petitioners in any way contributed to the absence of their witnesses." *Id.* at 876. The court noted that because alibi was the only defense, the trial judge's denial of the motion for a day's continuance "effectively denied [the defendants] the right to present their defense." Relying on the short delay requested and the trial court's duty to "direct[ ] the prosecutor to look into [the] pos-

sible contempt of the court's process, with a view to redressing its disastrous effect by securing the witnesses' presence if at all possible," the court held that the defendants were deprived of a fair trial. *Id.* Singleton, too, had only one defense; because of a prior conviction, he could not testify on his own behalf. His only defense was Knowles' testimony, the substance of which was intimated by Knowles' plea statement. The failure to continue the trial to enable Singleton to obtain Knowles' presence at trial deprived Singleton of a fair trial. It matters not that the trial judge's special narcotics term was about to end or that he had a doctor's appointment; fundamental rights do not depend on such vagaries.

It remains to be determined whether Singleton's Sixth Amendment argument is rendered inapplicable by his failure to appear for trial from October, 1971, until February, 1973. Why that failure of defendant should be regarded as affecting his right to compel Knowles' testimony is not immediately apparent. Knowles was taken into custody on the same day that the trial judge ordered Knowles' arrest as a material witness. At that point, appellant's prior failure to appear was rendered harmless, and the slate, in that respect, was wiped clean. The failure of Knowles to testify thereafter was attributable entirely to the negligence of the prosecutor, for which appellant was certainly not accountable.

However, even if this were not so, we agree with the dissenting opinion in the Court of Appeals. That is, assuming a causal relation between appellant's absence months before the State's disregard of the material witness order and Knowles' failure to testify, it would be an impermissible and devastating sanction to deprive Singleton of the right to secure the attendance of witnesses essential to his defense. *See People v. Singleton, supra,* 41 N.Y.2d at 412–13, 393 N.Y.S.2d at 361, 361 N.E.2d at 1010. As the Supreme Court emphasized in *Faretta v. California,* 422 U.S. 806, 818, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975), "the Amendment constitutionalizes the right in an adversary criminal trial to make a de-

fense as we know it." And "[t]he rights to notice, confrontation, and compulsory process, . . . [are] fundamental to the fair administration of American justice . . ." *Id.* We refuse to constrict the protection afforded a criminal defendant by the Sixth Amendment where the testimony is vital to the defense and but for the State's improper release of the potential witness there would have been no need for a further continuance. *Cf. Bray v. Peyton,* 429 F.2d 500 (4th Cir. 1970) (new trial ordered on habeas petition where conduct of government, even if not deliberate, obstructed defendant's offer of exculpatory proof).

■ Although not urged by the State in any of the prior proceedings or on this appeal, an argument can be made that defense counsel waived appellant's right to compulsory process by failing to offer Knowles' plea statement [13] after the trial court refused to grant an additional continuance. It does not appear why counsel failed to proffer the declaration. We cannot imagine any trial strategy that conceivably would produce an intentional decision not to introduce the statement. Perhaps Mr. Fabricant thought, not without good

reason, that New York's hearsay rules prohibit introduction of the declaration.[14] In any event, an inadvertent failure to offer alternative proof, the admissibility of which was doubtful, *see* note 14 *supra,* will not serve to preclude appellant from asserting his important Sixth Amendment right to compel the live testimony of Knowles. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), do not control this case. We are not confronted with a situation where the defendant seeks to raise in a federal collateral attack an objection which was either not presented at the state trial or was presented in an inappropriate manner. Defense counsel repeatedly requested continuances, and also urged the constitutional infirmity underlying the trial court's failure to grant the continuance in a motion to set aside the verdict. The recent Supreme Court cases do not extend so far as to preclude Singleton from raising judicial error of constitutional proportions simply because the de-

---

**13.** It will be recalled that prior to the commencement of trial, Mr. Fabricant apprised the court of his intention to introduce the plea statement as a declaration against penal interest if Knowles could not be located. *See ante* at 4.

**14.** We note that under New York law, the admissibility of Knowles' statement as a declaration against penal interest is far from clear. Perhaps counsel thought that the witness was not "unavailable" within the meaning of the hearsay exception. Since at least 1970, material hearsay statements against penal interest made by third persons have been admissible in New York, but only when the declarant is "dead, beyond the jurisdiction and thus not available; or where he is in court and refuses to testify as to the fact of the admission on the ground of self incrimination." *People v. Brown,* 26 N.Y.2d 88, 94, 308 N.Y.S.2d 825, 829, 257 N.E.2d 16, 19 (1970). None of these specific unavailability prerequisites exists in the instant case. Moreover, whether Knowles was "unavailable" in any sense of the word is questionable since in all probability Knowles could have been found without much difficulty or delay. *See ante* at 7; 5 *Wigmore on Evidence* § 1405, at 215–19 (Chadbourn ed. 1974).

Additionally, Knowles' statement may have actually favored his penal interest at the time it was made. While it did contain a fact against his interest—his admission that he knew the drugs were present because he saw Joseph Powell buy them—*see* 5 *Wigmore on Evidence, supra,* § 1462, at 337, the statement was made in the course of implementing a plea bargain which would leave him guilty of only a misdemeanor. *See United States v. Seyfried,* 435 F.2d 696, 697–98 (7th Cir. 1970) (confession exonerating possible accomplices held not against declarant's penal interest because it "did not subject him to any additional charges or more severe punishment and in no way could be construed to adversely affect his penal interest"), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 654 (1971). His possible motive to misrepresent cannot be discounted in determining whether the allocution declaration was against his interest. *See Bunge Corp. v. Manufacturers Hanover Trust Co.,* 37 A.D.2d 409, 325 N.Y.S.2d 983 (1st Dep't 1971) (excluding statement prepared for litigation that was not clearly against declarant's interest where there was a motive to falsify), *aff'd on other grounds,* 31 N.Y.2d 223, 335 N.Y.S.2d 412, 286 N.E.2d 903 (1972); 5 *Wigmore on Evidence, supra,* §§ 1463–64, at 337–39.

fense did not offer other evidence that might have mitigated the harm engendered by not having Knowles' live testimony. *Cf. Suggs v. LaVallee,* 570 F.2d 1092, 1116–19 (2d Cir. 1978) (failure to assert at sentencing proceeding defendant's prior incompetency when he pleaded guilty does not constitute a waiver, for purposes of federal habeas corpus relief, of his attack on the constitutionality of the sentencing proceeding). Moreover, to preclude appellant from asserting his right to compulsory process seems most inappropriate where the State's own inadvertence caused Knowles' unavailability.

Judgment reversed; caused remanded with directions to issue writ of habeas corpus unless the State furnishes appellant a new trial within sixty days of the order of the district court.

MANSFIELD, Circuit Judge (dissenting):

I dissent because appellant has failed to show that Knowles' testimony would have been relevant, material, and favorable to appellant. There was, therefore, no denial of appellant's Sixth Amendment right to compulsory process, and no abuse of discretion on the part of the state court trial judge in not granting a fourth continuance for the purpose of locating Knowles and compelling his attendance as a witness.[1]

The Sixth Amendment entitles an accused "to have compulsory process for obtaining witnesses *in his favor.*" U.S.Const. Amend. VI (emphasis supplied). The Supreme Court described the right to compulsory process in *Washington v. Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967), as the right to testimony that would be "relevant and material to the defense."

Therefore, in determining whether to delay a trial because of a witness' absence, the trial judge must consider not only the defendant's diligence in attempting to secure the presence of the missing witness, and the likelihood that the witness would be produced if a continuance were granted, but also, of equal importance, the question of whether the witness' testimony would be relevant,

---

1. Although the majority opinion states that the trial judge "refused" to grant a fourth continuance, the record shows that defense counsel never asked for a continuance when he returned to court on the afternoon of August 29, but instead rested without objection. (Tr. 224). Nor did counsel offer the transcript of Knowles' allocution statement, which was available, and which counsel had earlier informed the court he would offer if Knowles did not appear. No suggestion was made by counsel at that time or at any other time during the trial that resumption of the proceedings without Knowles' testimony would violate the appellant's constitutional rights.

The importance of these facts is two-fold. First, it shows that this case is vastly different from *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), which involved a defendant, charged with murder, who was not allowed to introduce exculpatory testimony of a co-defendant solely because of two seemingly irrational state statutes that disqualified an alleged or convicted accomplice from testifying for a defendant, although it permitted him to testify for the prosecution. The Supreme Court understandably characterized this as an arbitrary denial of the defendant's right of compulsory process. 388 U.S. at 23, 87 S.Ct. 1920.

In this case, the state trial judge issued the subpoenas for Powell and Knowles when they were requested. The judge later inquired, at the opening of the trial, whether service had been made and encouraged defense counsel to make every effort to locate the witnesses. (Tr. 20). When the witnesses failed to respond to the subpoenas, the judge continued the trial, and then issued the material witness orders the next day when they still had not appeared. When informed that the police had mistakenly released Knowles from custody, the judge personally telephoned the District Attorney's Office to determine what had occurred. He adjourned the trial for the third time, until the afternoon, and ordered the assistant district attorney to help the defendant and his counsel to locate Knowles again. (Tr. 222–23).

This solicitude for the defendant's right to produce witnesses in his favor cannot be equated properly with the arbitrary denial of that right in *Washington v. Texas, supra,* particularly since defense counsel did not make another request for a continuance, made no objection to the resumption of the trial, and did not suggest to the court that Knowles' absence would constitute a violation of appellant's constitutional rights.

Secondly, counsel's failure to follow through on his earlier expressed intention to offer the transcript of Knowles' allocution statement suggests that the testimony was not considered as vital by him then as it is thought to be now.

material, and favorable to the defense. The Constitution does not guarantee an accused the right to introduce irrelevant or immaterial evidence; nor does it entitle a defendant to compel the production of witnesses against him. See *United States v. Taylor,* 562 F.2d 1345, 1362 (2d Cir. 1977); *United States v. Haldeman,* 181 U.S.App. D.C. 254, 307, 559 F.2d 31, 84 (1976); *Dearinger v. United States,* 468 F.2d 1032, 1034–35 (9th Cir. 1972). See generally, Westen, Compulsory Process II, 74 Mich.L.Rev. 191 (1975).[2]

As Judge Oakes of this court stated in *United States v. Taylor, supra,* at 1362:

"While ordinarily it would be of the greatest moment if a defendant were denied his right to compel the attendance of witnesses in his defense, see *Faretta v. California,* 422 U.S. 806, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Washington v. Texas,* 388 U.S. 14, 18–19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), particularly when the defendant seeks a witness in Government custody, here there was no showing either at the time of the request or subsequently as to what favorable evidence Garner would have provided if he had been called to testify and had waived his Fifth Amendment privilege. It is not improper to deny a request for a subpoena where the testimony of the witness would be only cumulative, *United States v. Rosa,* 493 F.2d 1191, 1194 (2d Cir.), *cert. denied,* 419 U.S. 850, 95 S.Ct. 89, 42 L.Ed.2d 80 (1974), where the defendant is vague as to the witness's potential evidence and is also aware that the witness might invoke the Fifth Amendment, *United States v. Wyler,* 487 F.2d 170, 173–74 (2d Cir. 1973), or where the witness would only give irrelevant testimony not necessary to an adequate defense, *United States v. Romano,* 482 F.2d 1183, 1195 (5th Cir. 1973), *cert. denied,* 414 U.S. 1129, 94 S.Ct. 866, 38 L.Ed.2d 753 (1974). See also *United States v. Sellers,* 520 F.2d 1281, 1285–86 (4th Cir. 1975), *vacated on other grounds,* 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 728 (1976). *Cf.* Fed.R.Evid. 403 (relevant evidence may be excluded because of 'considerations of undue delay, waste of time, or needless presentation of cumulative evidence'). Since there was never any showing of what Garner's testimony would be, it was proper to deny the continuance."

The showing of relevance, materiality, and favorability that must be made will, of course, vary according to the circumstances confronted by a defendant seeking the evidence. If the witness has not been available for, or amenable to, an interview by the defendant or his counsel, then the witness' unavailability or uncooperativeness may excuse a defendant's failure to make a specific offer of proof concerning the witness' anticipated testimony. Even in such a case, however, a defendant must still be able to point to independent facts, as distinguished from speculation or conjecture, indicating that if subpoenaed the witness would be forced to give relevant and favorable testimony of material significance to the defense.

Such a showing should suffice to warrant a continuance. But if the defense, despite ample opportunity, has failed to exercise due diligence in attempting to obtain from the witness a statement (oral or written) of the substance of his anticipated testimony, and, in addition, the court is asked to speculate as to whether the witness will possibly give relevant and material testimony favorable to the defendant, a continuance is not mandated by the Constitution. *United States v. Taylor, supra,* 562 F.2d at 1362; *United States v. Haldeman, supra,* 559 F.2d at 84; *Dearinger v. United States, supra,* 468 F.2d at 1034–35.

Moreover, when a defendant, years after his conviction, seeks habeas relief based on a trial judge's alleged abuse of discretion in not granting a continuance, the petitioner should at the very least be obligated to

2. In his comprehensive article on the right to compulsory process, Professor Westen states, "[a] defendant is not entitled to a continuance (nor, for that matter a subpoena) for absent witnesses unless he can offer proof that their testimony will be competent, relevant, material, and favorable to his defense." 74 Mich.L. Rev. at 241 (footnotes omitted).

furnish an affidavit setting forth his efforts during the interim to obtain a statement from the missing witness and, if an oral or written statement was obtained, the substance of what the missing witness would have testified to if a continuance had been granted and he had been forced to testify. This should be a basic condition precedent to habeas relief when the allegation is a violation of the defendant's right of compulsory process.

Applying these principles here, on October 10, 1972, Knowles, whom appellant later proposed to call as a witness, pleaded guilty to criminal possession of a dangerous drug in the sixth degree, a Class A misdemeanor, N.Y.Penal Law § 220.05, and on October 25, 1972, was sentenced to time already served. On February 23, 1973, appellant, who had absconded after he had been indicted on January 6, 1972, was arrested pursuant to a bench warrant and was brought to trial on August 22, 1973. Thus appellant's trial took place approximately 10 months after Knowles had, upon his guilty plea, made the statement now pointed to by appellant as the basis for calling him as a witness.

During this 10-month period Knowles, having completed his sentence, was at large. Moreover, his whereabouts were apparently known to appellant and he was available to appellant or his counsel during the 6-month period between appellant's arrest (Feb. 23) and his trial (Aug. 22). Indeed, appellant's wife and brother went to see Knowles at his home during the trial and received his assurance that he would appear and testify. The police had no difficulty locating him at his home on August 28 and taking him into custody.

We have no indication in the record that appellant or his counsel ever attempted to interview Knowles, much less that Knowles ever refused to talk with appellant's counsel, during this long period of apparent availability. Yet appellant, although his wife and brother "stressed the importance of his [Knowles'] testimony" when they visited him, has consistently failed to give the substance of what Knowles would testify to other than to point to a portion of his allocution statement of October 10, 1972, when he pleaded guilty. (According to appellant's trial counsel, neither appellant's wife nor his brother knew "what he [Knowles] was going to testify to.") (Tr. 217).

I fail to find in Knowles' October 10, 1972, statement, the relevant portion of which is reproduced in the margin,[3] a sufficient indication that he would have given relevant and material testimony that would have been genuinely favorable to appellant. Knowles merely stated, obviously in an effort to minimize his own participation in the alleged crime (he at first denied knowledge of the presence of drugs in the car), that the heroin (described by Knowles as cocaine) found in the envelopes on the front seat of the car next to a seat occupied by appellant, belonged to Powell and that Knowles was present when Powell had bought it.

Knowles did not say that appellant was not also present when the purchase had been made, or that appellant had not been informed about the heroin. Nor did

3. "The Court: What happened?
 The Defendant: The police car flagged us down and asked for the registration of the car and Joe showed him the registration, you know; and he asked for the sticker of the car, and he couldn't find the sticker so he took out his flashlight and flashed it on the car and accidentally flashed it on the seat and he saw a brown envelope on the seat, and in it he checked the envelope out and it contained drugs.
 The Court: When you say Joe, who are you referring to?
 The Defendant: One of the defendants, Joe Powell.

 The Court: Who else was in the car?
 The Defendant: A boy named Singleton.
 The Court: Alonzo Singleton?
 The Defendant: Yes.
 The Court: Whose narcotic drug was it?
 The Defendant: It was Joe's.
 The Court: How do you know?
 The Defendant: Because he bought it.
 The Court: How do you know he bought it; were you there?
 The Defendant: Yes; I was there at the time.
 The Court: So that you did know there was drugs in the car?
 The Defendant: Yes."

Knowles indicate in any way that appellant was unaware of the presence of the heroin in the car or that he was not a co-owner or joint possessor with Knowles and Powell. Moreover, Knowles' identification of Powell as the purchaser did not lead Knowles himself to deny joint possession—indeed, he pleaded guilty to knowing possession.

Since Knowles' allocution statement is fully consistent with appellant's having likewise been present at the purchase of the heroin, and having shared in knowing possession of the drug, the suggestion that he would have given testimony exculpating appellant amounts to rank speculation of the flimsiest sort. We could just as well infer that he failed to appear at trial because he knew that his testimony would incriminate appellant by implicating him in the possession to which Knowles himself had pleaded guilty even though Powell, according to Knowles' statement, was the owner of the drug. The very fact that we must engage in this speculation reveals that appellant has failed to make the requisite showing, particularly with respect to whether the evidence would be favorable to his defense.

Indeed, appellant's counsel repeatedly stated that he did not know what Knowles would testify, or whether his testimony would be favorable to appellant. He informed the state trial judge that he did not have "the foggiest idea whether . . . [Knowles'] testimony will help or hurt" appellant, and that the testimony of Knowles and Powell might in fact "make the District Attorney's case for him." (Tr. 217, 214). The Supreme Court's decision in *Washington v. Texas, supra*, 388 U.S. at 23, 87 S.Ct. 1920, heavily relied upon by the majority, is clearly distinguishable, since the record there showed the specific exculpatory testimony that would have been given by the witness had he been allowed to testify.

In addition to the 6-month period prior to trial during which Knowles or his counsel could have (but apparently did not) interview Knowles, appellant has had nearly four years from the date of his conviction (Aug. 30, 1973) to the filing of his federal habeas petition (Mar. 16, 1977) within which

to take such action. However, no showing is made of any effort to obtain from Knowles a statement of the substance of what he would have testified to if a continuance had been granted and he had been brought to trial as a material witness.

Absent a statement of what Knowles would testify or a showing of unsuccessful good faith efforts to interview Knowles, coupled with a reasonable basis for belief that he would, if brought to trial by force, give testimony that was relevant, material, and favorable to appellant, the circumstances here do not provide any basis for a constitutional claim under the Sixth or Fourteenth Amendments.