**UNITED STATES of America, Appellee,**

v.

**Richard ROSARIO, Appellant,**

**No. 268, Docket 28151.**

United States Court of Appeals Second Circuit.

Argued Jan. 15, 1964.

Decided Feb. 10, 1964.

562

Michael S. Fawer, Asst. U. S. Atty., New York, N. Y. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, and Charles A. Stillman, Asst. U. S. Atty., New York, City, on the brief), for appellee.

Joseph I. Stone, New York City, for appellant.

Before LUMBARD, Chief Judge, and SWAN and SMITH, Circuit Judges.

LUMBARD, Chief Judge:

Richard Rosario appeals from a judgment of conviction on two counts of a three-count indictment charging him with conspiracy to sell and with the sale of narcotics knowing the same to have been illegally imported. 21 U.S.C. §§ 173–174. Judgment was entered in the Southern District of New York after a two-day trial before Judge Croake, sitting without a jury. Finding no error, we affirm the judgment of the district court.

Three federal narcotics agents testified to the following course of events. On October 15, 1962, at approximately 7:00 P.M., agent Weinberg was introduced to the defendant Rosario by a special employee, or informer, in the area of 145th Street and Broadway in Manhattan. After a brief discussion concerning the amount of heroin Weinberg desired to purchase and the sale price, Rosario indicated that either he or someone else would return shortly to deliver the narcotics. At approximately 7:30 P.M., Rosario returned and informed Weinberg and the informer that he would deliver the narcotics at 9:30 at 136th Street and Broadway. These activities were observed by agents Cockerille and Panella.

A few minutes after Weinberg and the informer had arrived at 136th Street and Broadway, they were met by Rosario and Michael Del Rosario, a co-defendant who ultimately pleaded guilty and whom Rosario had met in a restaurant just after the defendant's second meeting with Weinberg. Apparently feeling that the area was not safe for a delivery, Rosario directed Weinberg to come to the uptown side of the subway entrance on 79th Street and Broadway.

Soon after Weinberg and the informer arrived at the subway station Del Rosario met them and handed Weinberg a bag; Weinberg gave Del Rosario $150 and told him that if the supply was good he would purchase more. Del Rosario assured him that the supply was good and also stated that he was working for someone named Richie, the name by which Rosario had first been introduced to Weinberg.

As the three emerged from the subway station Del Rosario approached Rosario, who had arrived with Del Rosario but had waited outside the station. Del Rosario was observed by Panella and Cockerille passing the money to Rosario. The bag received by Weinberg was subsequently found to contain heroin in a glassine envelope. The next day Weinberg against purchased heroin from Del Rosario, who again met Rosario after the delivery.

Rosario raises two principal claims of error, first that the government's evidence failed to support a finding that he had constructive possession of the narcotics passed from Del Rosario to Weinberg, and second that the trial judge improperly refused to direct the government to disclose the true name of the informer.

■■ Constructive possession may be established by a showing of dominance and control over the narcotics although physical custody remains in an agent over whom the defendant exercises control. United States v. Hernandez, 290 F.2d 86 (2 Cir. 1961). Here, the evidence well supports Judge Croake's finding that Rosario "was no casual participant in any of the above transactions; in each he was the active promoter who assured the delivery of heroin to the undercover agent. In each instance he put into motion the chain of events which led to the sale of heroin to the undercover agent, culminating in delivery of the heroin by the codefendant, Michael Del Rosario."

■ We find no error in the government's refusal to disclose the true name of the informer. Agent Cockerille, on direct examination, testified that one name by which the informer was known was Roy Cummings. Agents Weinberg and Panella were questioned on cross-examination as to the true name of the informer, but Judge Croake sustained government objections. Del Rosario testified for the defense and stated that although agent Weinberg was present at both sales a man he knew as Roy Cummings had given Del Rosario the money and received the narcotics. Rosario, tes-

tifying on his own behalf, stated that he was an addict and admitted that he knew Roy Cummings and that they had occasionally exchanged narcotics and that he and Del Rosario had occasionally given each other money. Rosario denied any complicity in the transactions of October 15 and 16, declaring that he had not been present at any of them.

It is thus clear that both the defendant and Del Rosario knew the informer under the name of Roy Cummings. Moreover, Rosario testified that he knew where Cummings usually could be located but that he had made no attempt to do so. Although Rosario's attorney cross-examined agent Cockerille about an alleged conversation between him and Cummings when Cummings was in prison at some prior time, the attorney did not even pursue this information so far as to inquire as to Cummings' whereabouts at the time of Rosario's trial or where he might be located. In short there is no showing that the defense really sought to locate Cummings. Nor has any showing been made that the failure to learn his real name could have prejudiced the defense.

In Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court stated: "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [of nondisclosure] must give way." However, the Court did caution that the resolution of these questions requires a balancing of the public interest in the continued flow of information against the right of the accused adequately to prepare his defense.

While, of course, it is possible that Cummings would have supported Rosario's unlikely story, there is certainly nothing in this record to suggest that he would have done so. Moreover, since the defendant here knew the identity of the informer—at least by an alias— and knew the places he frequented, in the absence of some showing that the de-

fendant made a diligent attempt to locate Cummings but could not do so without further information, we are unable to see any prejudice to the defense arising from the government's position.

Our disposition of this case does not negate the government's obligation to disclose the informer's identity or information about him where it is clear that the defense is in need of this information in order to secure his attendance to testify. Indeed, there may be cases where the government would be under a duty to produce the informer, if it is able to do so. But this case falls far short of establishing that the government's failure to supply information amounts to error. Of course, where the reliability of the informer's information is essential to establish probable cause, the government must give the information or suffer the consequence. United States v. Robinson, 325 F.2d 391 (2 Cir. 1963).

The judgment of the district court is therefore affirmed.