**Rufus BOYD, Petitioner,**

v.

**Eugene LeFEVRE, Warden, Clinton Correctional Facility, Respondent.**

No. 80 C 2071.

United States District Court, E. D. New York.

July 29, 1981.

Joel A. Brenner, East Northport, N. Y., for petitioner.

Eugene Gold, Dist. Atty., Kings County, Brooklyn, N. Y. by Michael J. Halberstam, Asst. Dist. Atty., Brooklyn, N. Y., for respondent.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Petitioner is currently a State prisoner serving two concurrent terms of 25 years to life following his conviction on two counts of sale and two counts of possession of heroin. He has applied to the Court for a writ of habeas corpus claiming that his constitutional rights were denied by (1) variance between the indictment and the evidence upon which the trial court allowed him to be convicted; (2) the trial court's decision to sequester the jury during trial; (3) alleged irregularities in jury selection; (4) the absence of a confidential informant as a witness at his trial; and (5) the alleged improper consideration at sentencing of certain materials. Since the Court is of opinion that each of petitioner's contentions is without merit, the petition is denied.

Petitioner states that he does not challenge the sufficiency of the evidence adduced at trial, which revealed the following. Petitioner was arrested after a "buy operation" during which heroin was sold to Veronica Baker, an undercover police officer, on two occasions at petitioner's garage in Brooklyn, New York. During the summer of 1974, Baker made contact with petitioner through William Campbell, a confidential informant who owned the garage next to petitioner's and who had been indicted on narcotics charges earlier that year. Campbell drove Baker to petitioner's garage on several occasions, but was not present during the two purchases.

On November 28, 1974, Baker met with petitioner in his office at the garage and gave him $5,400 in order to obtain heroin. Petitioner put the money in his filing cabinet and Baker departed while the heroin was sent for. Less than an hour later, Baker returned and saw petitioner standing outside the garage while petitioner's co-defendant, one Hasty Hyman, led her into petitioner's office, where he gave her a

package containing almost four ounces of heroin. As Baker left, she passed by petitioner, who was still standing outside, and the two exchanged nods.

Two weeks later Baker had several conversations with petitioner regarding the quality of the heroin and the possibility of future sales. Petitioner said he would try to get her some more heroin, but that there were "too many cops around."

On December 19, 1974, Baker met petitioner outside his garage and asked to buy $5,200 worth of heroin. Petitioner said it would be ready in 15 minutes and the two went into his office, where the police officer gave petitioner the money. When Baker told petitioner that she preferred not to receive the heroin from Hasty Hyman, he responded that he wouldn't handle the narcotic and she would have to get it from Hyman. Baker left and, upon her return to the office a half hour later, Hyman gave her another four-ounce package of heroin. Several taped conversations secretly made on this and other occasions were admitted in evidence at trial.

The instant conviction that petitioner attacks followed his third trial on an indictment based on these events. At the first trial, the jury could not agree on a verdict on any of the charges against petitioner, although it acquitted Hasty Hyman on some counts. Petitioner was thereafter tried alone and convicted of sale and possession of heroin. On appeal, however, this conviction was reversed and a new trial ordered. *People v. Boyd*, 59 A.D.2d 558, 397 N.Y.S.2d 150 (Second Dept. 1977).

Prior to the start of petitioner's third trial, a combined hearing was held on the State's motion to sequester the jury and petitioner's motion to suppress certain tape recorded statements. The State presented evidence to show that petitioner had attempted to influence jurors and court officers at his earlier trials. The State also presented the testimony of an undercover agent who had been posing as a guard at the Brooklyn House of Detention while investigating corruption at that prison. The agent secretly tape recorded a conversation

he had with petitioner while he was awaiting sentence following the second trial. This tape was played at the sequestration hearing but suppressed for purposes of trial. In a detailed written opinion, the trial judge decided to sequester the jury, which subsequently convicted petitioner on four counts. His conviction was affirmed without opinion, *People v. Boyd*, 70 A.D.2d 787, 416 N.Y.S.2d 158 (Second Dept.), and leave to appeal to the Court of Appeals was denied. 48 N.Y.2d 715, 422 N.Y.S.2d 1029, 397 N.E.2d 1184 (1979), *adhered to on reconsideration*, 48 N.Y.2d 1028, 425 N.Y.S.2d 1046, 402 N.E.2d 147 (1980).

Petitioner's first contention is that the trial court's instructions to the jury impermissibly varied the elements of the crime as set forth in the indictment. Each of the four counts upon which petitioner was convicted alleged that he and Hasty Hyman "each aiding the other and being actually present" either sold or possessed heroin. The trial judge read the indictment and explained the above phrase as essentially "acting in concert." Petitioner claims that this charge violated his constitutional rights by permitting the jury to convict him even if he was not "actually present" throughout the sale or possession of the heroin as assertedly charged by the grand jury.

With regard to a claim of constitutionally impermissible variance, the Supreme Court has stated:

"The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935).

■ A variance will not be considered material unless the jury convicted "upon theories and evidence that were not 'fairly embraced in the charges made in the indictment'." *United States v. Silverman*, 430 F.2d 106, 111 (2d Cir. 1970), *quoting, Russell v. United States*, 369 U.S. 749, 793, 82 S.Ct. 1038, 1062, 8 L.Ed.2d 240 (1962) (Harlan, J., dissenting). See *United States v. Knuckles*, 581 F.2d 305, 311 & n.8 (2d Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978); *United States v. Garguilo*, 554 F.2d 59 (2d Cir. 1977). Finally, it has recently been settled in this Circuit "that convictions are not now set aside except for variance resulting in substantial prejudice to the defendant." *United States v. Knuckles, supra*, 581 F.2d at 312.

■ With these principles in mind, the Court is unable to accept petitioner's argument that the judge's charge effected an impermissible amendment of the indictment. We cannot read the indictment as charging that defendant and Hasty Hyman were "actually present" with each other at every phase of the charged sales or possessions. At most, the relied upon language of the indictment would require proof that petitioner was present at some phase of each of the crimes charged. The Court is of opinion that the suggested variance is too slight to permit a conclusion that the instructions did not "fairly embrace" the charges contained in the indictment. See *United States v. Garguilo, supra.*

Even if some variance could be perceived, petitioner makes no specific claim of prejudice, and his conclusory claim that the indictment was more narrowly drawn than the theory of the case as presented to the jury is insufficient to show that his "substantial rights" have been affected. *Berger v. United States, supra.* Certainly the judge's instructions did not permit conviction upon a new set of facts of which petitioner had not been given notice in the indictment. *Cf. Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (where Hobbs Act indictment charged interference with interstate shipments of *sand into* Pennsylvania but trial

court's instructions permitted conviction on proof of shipments of *steel out of* the state). In light of the fact that the trial was the third time petitioner had heard the State's proofs on the same indictment, it could not be said that the variance, if any, surprised petitioner's trial counsel and left him unprepared to defend the case. Nor is there any question that the set of facts and theory of the case as presented to the jury allowed conviction for conduct that constituted the crimes of sale and possession under New York law. See, *e. g., People v. Diaz*, 41 A.D.2d 382, 343 N.Y.S.2d 474 (First Dept. 1973), *aff'd mem.*, 34 N.Y.2d 689, 356 N.Y. S.2d 295, 312 N.E.2d 478 (1974); *People v. Goetz*, 77 Misc.2d 319, 352 N.Y.S.2d 829 (Dutchess County Court, 1974). Finally, the proofs and charge to the jury clearly demonstrated the offenses for which defendant stood trial and preclude the possibility that he could be again put in jeopardy for that conduct. See *United States v. Knuckles, supra*, 581 F.2d at 311–12. Accordingly, petitioner's claim of prejudicial variance must be rejected.

■ Petitioner's next set of claims arises out of the pre-trial hearing held on the State's motion to sequester the jury. He first complains of the trial judge's decision to seal the courtroom during the testimony of the undercover agent who had taped petitioner's conversation in the Brooklyn House of Detention. The right to a public trial, however, is not absolute. *U.S. ex rel. Lloyd v. Vincent*, 520 F.2d 1272, 1274 (2d Cir.), *cert. denied*, 423 U.S. 937, 96 S.Ct. 296, 46 L.Ed.2d 269 (1975); and trial courts in their discretion may exclude the public for part, or even all, of a criminal proceeding where deemed necessary to preserve order, protect witnesses, or to maintain the confidentiality of certain information. See *United States v. Bell*, 464 F.2d 667 (2d Cir.), *cert. denied*, 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972). Here we are wholly unable to discern any abuse of discretion in the closing of the courtroom during one part of a pre-trial hearing in order to avoid public exposure that might imperil not only the undercover agent per-

sonally, but also his usefulness as an active confidential investigator. See *U.S. ex rel. Lloyd v. Vincent, supra.*

■ The testimony of the undercover agent revealed that petitioner had stated that he had offered $10,000 to a court officer at his second trial to engineer a mistrial. Noting that the trial judge suppressed this evidence for purposes of trial, petitioner argues that the court erred in considering this evidence in its determination of the sequestration issue. Moreover, he claims that the indictment should have been dismissed. Even were we to assume that this surreptitious contact with petitioner after criminal charges had been brought violated his right to counsel, see *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); but see *United States v. Calder,* 641 F.2d 76, 78–79 (2d Cir. 1981); we would be unable to find error of a constitutional magnitude.

■ The Supreme Court has only recently ruled that the proper and sufficient remedy for an assumed Sixth Amendment violation of this type is suppression of the evidence garnered, *not* dismissal of the indictment. *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). That remedy petitioner obtained in full. It is also clear that improperly gathered evidence may be used to impeach the credibility of a defendant. *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Here, where petitioner's credibility and trustworthiness had been put in issue by his earlier attempts to tamper with court proceedings, it was similarly not improper to admit this evidence at the sequestration hearing, which was, in any event, a collateral proceeding unrelated to the ultimate question of guilt or innocence. See *United States v. Calandra,* 414 U.S. 338, 343, 348–49, 94 S.Ct. 613, 617, 620, 38 L.Ed.2d 561 (1974); *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

■ Nor can we see any merit in petitioner's complaint that the trial court improperly admitted hearsay at the sequestration hearing in the form of the testimony of two court officers as to what they had heard from jurors at the first trial. The testimony of the officers was buttressed by the written statements of three jurors themselves who attested to irregularities at the first trial, including the observation of petitioner lunching with one of two jurors who subsequently caused the jury to be hung. Since the hearing clearly did not determine petitioner's guilt or innocence, and since the officers had evidence bearing upon the critical question of whether petitioner had tampered with an earlier jury, which testimony was in any event supported by independent evidence, see *United States v. Fatico,* 579 F.2d 707 (2d Cir. 1978), aff'd on appeal from remand, 603 F.2d 1053 (2d Cir. 1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980); it was not error to permit this testimony.

Finally, the Court's independent review of the record of the sequestration hearing reveals ample evidence to support the trial court's exercise of its discretion to sequester in order "to protect the jury from interference." *Sheppard v. Maxwell,* 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966). See *United States v. Robinson,* 503 F.2d 208, 215 (7th Cir. 1974).

■ Petitioner's next attempt to discover error in his trial proceedings is based upon the judge's handling of jury selection. In this regard, trial courts are generally accorded great discretion in conducting voir dire, see *Rosales-Lopez v. United States,* —— U.S. ——, 101 S.Ct. 1629, 1635, 68 L.Ed.2d 22 (1981); and a criminal defendant's due process rights will only be violated by procedures that are fundamentally unfair. See *United States v. Gibbons,* 602 F.2d 1044 (2d Cir.), *cert. denied,* 444 U.S. 950, 100 S.Ct. 421, 62 L.Ed.2d 319 (1979). Notwithstanding petitioner's claims of unfairness, our review of the record discloses that the trial judge properly—and repeatedly—instructed the panel on fundamental principles of law and inquired suffi-

ciently into their views on the presumption of innocence. See *United States v. Reed*, 526 F.2d 740 (2d Cir. 1975), *cert. denied*, 425 U.S. 956, 96 S.Ct. 1525, 47 L.Ed.2d 773 (1976). Since the procedures protected petitioner's "substantial rights," the trial judge's "reasonable limitations on the questioning should not be disturbed on" collateral attack. *United States v. Barnes*, 604 F.2d 121, 140 (2d Cir. 1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). See *United States v. Taylor*, 562 F.2d 1345 (2d Cir.), *cert. denied*, 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977).

Petitioner also complains that the petit jury ultimately chosen was not composed of a fair cross-section of the community because only jurors who could be sequestered for two weeks were selected, and because the prosecutor exercised peremptory challenges to exclude some blacks. In this regard, an issue of constitutional dimension is raised only if identifiable segments of the community are systematically excluded from the petit jury. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). With regard to the effect of sequestration upon the fair selection of the jury, petitioner's vague objection wholly fails to demonstrate how any " 'distinctive' group in the community" was excluded. Indeed, a widely varying range of reasons, most of them personal, was given by those panelists who preferred not to serve on a sequestered jury, and we can discern no single pattern underlying the excusing of veniremen for this reason. Moreover, the trial judge repeatedly instructed the panel to draw no inferences whatsoever from the fact that the petit jury would be sequestered during petitioner's trial.

Regarding the prosecutor's exercise of peremptory challenges against blacks, since some blacks in fact were selected for petitioner's petit jury, the Court is unable to find that members of his race were systematically excluded, see *United States v. Danzey*, 476 F.Supp. 1065 (E.D.N.Y.1979), *aff'd mem.*, 620 F.2d 286 (2d Cir. 1980); and accordingly the prosecutor's purpose in ex-

ercising such challenges is both irrelevant and beyond our inquiry. *Swain v. Alabama*, 380 U.S. 202, 220–21, 85 S.Ct. 824, 835–36, 13 L.Ed.2d 759 (1965).

Petitioner next contends that the writ should issue because the State did not produce at trial William Campbell, the informant who had introduced officer Baker to petitioner. Under the circumstances of this case, however, we are unable to conclude that defendant was denied the right to compel the attendance of witnesses in his defense. See *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

In this regard, where a defendant already knows the identity of an otherwise confidential informant whose testimony he has shown would be helpful to the defense or essential to a fair trial, the prosecutor may not assert an absolute privilege against disclosing information regarding the whereabouts of an informant. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). However, even when the defense has made such a showing, the prosecutor

"does not become the guarantor of its informer's presence at trial, *United States v. Russ*, 362 F.2d 843, 844 (2d Cir.), *cert. denied*, 385 U.S. 923 [87 S.Ct. 236, 17 L.Ed.2d 146] ... (1966), and does not have a duty to produce him. *United States v. Cimino*, 321 F.2d 509, 512 (2d Cir. 1963), *cert. denied, D'Ercole v. United States*, 375 U.S. 967, 974 [84 S.Ct. 486, 491, 11 L.Ed.2d 416] [1964] .... All that the defendant is entitled to under such circumstance is the informer's name, such information as the Government may have concerning his whereabouts, and reasonable cooperation in securing his appearance." *United States v. Turbide*, 558 F.2d 1053, 1060 (2d Cir.), *cert. denied*, 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977).

Finally, a

"defendant who knows the informer must show that he has made a diligent attempt to locate him before relief will be ordered under *Roviaro*. See *United States v. Ro-*

*sario*, 327 F.2d 561, 563–64 (2d Cir. 1964) . . . ." *Id.*, n.6.

■ With these principles in mind, we note first that petitioner concedes that he knew Campbell's identity—indeed, the informant's name and role had been explored at both previous trials. It is apparent, then, that petitioner's claim is fatally flawed by his failure at any of his three trials to subpoena Campbell or to make any application to the court for an order directing the prosecutor to assist him in locating the informant. In the absence of such efforts, it simply cannot be said that the prosecutor improperly failed to cooperate in producing a witness desired by the defense, or that the trial court erred in refusing either to issue a court order for the production of Campbell or to grant a continuance for the purpose of locating him. *Cf. Singleton v. Lefkowitz*, 583 F.2d 618 (2d Cir. 1978), *cert. denied*, 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 486 (1979).

Petitioner argues, nonetheless, that his Sixth and Fourteenth Amendment rights to compulsory process were violated because the State had lost contact with the informant and was unable to produce him at trial. Petitioner relies upon *Singleton v. Lefkowitz, supra*, a case where the State, during trial, improperly released a former co-defendant who had been arrested on a material witness warrant issued by the trial judge at the defendant's request. Here, it would be difficult to conclude that improper conduct by the State caused Campbell's unavailability at petitioner's third trial. Campbell had been indicted on narcotics charges in 1974 and thereafter began cooperating with the State as an informant on numerous successful investigations. By the summer of 1976 he had gone to South Carolina and apparently was no longer working with the State. The last information the District Attorney's office received regarding Campbell came in July 1976, when local authorities in South Carolina telephoned to say that he had been shot. The charges against Campbell were subsequently dismissed. It is petitioner's contention that the State's failure thereafter to maintain contact with Campbell constituted intentional or at least reckless interference with his right to compulsory process.

■ We disagree. At the time of the State's last opportunity to contact Campbell, petitioner had already been found guilty at his second trial, which conviction was yet to be overturned on appeal. Campbell had not been called as a witness by the State or by the defense at either the first or second trial. At neither of those trials had petitioner requested that Campbell be produced or sought a "missing witness" charge when he was not. Under these circumstances, we cannot read *Singleton* as imposing upon the prosecution an affirmative duty to maintain control over a former informant on the chance that a reversal might occur and the defendant might thereafter change his apparent position that the informant was not important to his defense. The State's conduct almost two years prior to petitioner's third trial simply does not rise to the level of wrongful interference with defense witnesses sufficient to constitute a violation of his Sixth and Fourteenth Amendment rights. Compare *United States v. Smith*, 478 F.2d 976 (U.S.App.D.C. 1976) (potential defense witness advised he might incriminate himself and be prosecuted if he testified); *United States v. Mendez-Rodriguez*, 450 F.2d 1 (9th Cir. 1971) (government deported aliens on whose testimony defense relied); *Bray v. Peyton*, 429 F.2d 500 (4th Cir. 1970) (witness arrested on charge that had previously been dropped). Since petitioner has not shown that Campbell's unavailability was caused by the State's improper conduct, the general rule applies that the State "has no obligation to look for a defendant's witnesses." *Singleton v. Lefkowitz, supra*, 583 F.2d at 624.

■ Moreover, in *Singleton*, the error requiring the issuance of a habeas writ was that of the *trial court*, following the State's demonstrably wrongful release of the witness, in not granting requested continuances for the purpose of allowing the defense to locate the witness. See also *Ronson v. Commissioner of Corrections*, 604 F.2d 176 (2d Cir. 1979). In the instant case,

even if the State could have more diligently maintained contact with Campbell, petitioner failed to subpoena him or request a continuance in order to locate him. Indeed, it appears that petitioner explored this matter at trial solely for the purpose of requesting a missing witness charge and obtaining the benefit of the adverse inference such a charge permits.[1] Under these circumstances, petitioner cannot now complain of a denial of the right to compel witnesses called on his behalf.[2] *Ronson v. Commissioner of Corrections, supra; United States v. Turbide, supra.*

Finally, petitioner attacks his sentence on the ground that the prosecutor improperly presented certain information to the sentencing judge in the form of a recitation of his criminal indictments, which had various dispositions, and his suspected connections to organized crime.

█ The judge, however, expressly stated that the sentence he imposed was based upon the pre-sentence report and upon his knowledge of petitioner as gathered during the course of the trial. See *Roberts v. United States,* 445 U.S. 552, 557, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980). Petitioner's failure to dispute the accuracy of the pre-sentence report precludes him now from challenging its consideration by the sentencing judge. *United States v. Fatico, supra,* 579 F.2d at 713.

█ Nor did the sentencing judge act improperly in considering the tape recorded conversation between petitioner and the undercover agent at the Brooklyn House of Detention. The accuracy of the tape was not challenged, and petitioner's statements regarding his attempts to subvert his second trial were highly relevant to his prospects for

> " 'rehabilitative efforts to assist with a lawful future career, [and] the degree to which he does or does not deem himself at war with his society'." *United States v. Grayson,* 438 U.S. 41, 51, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582 (1978), *quoting, United States v. Hendrix,* 505 F.2d 1233, 1236 (2d Cir. 1974).

Again, even if we were to assume that this information was obtained in violation of petitioner's right to counsel, the testimony could be considered at sentencing, since it was not obtained for the purpose of use at sentence. See *United States v. Schipani,* 435 F.2d 26, 28 (2d Cir. 1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971).

Accordingly, since none of petitioner's many claims merits the grant of a writ of habeas corpus, the petition is denied.

SO ORDERED.

The Clerk of the Court is directed to enter judgment dismissing the petition.

---

1. Since petitioner concedes that throughout his third trial the State had no knowledge of—much less control over—Campbell, we cannot see how the trial judge abused his discretion in declining to give an instruction permitting an adverse inference against a party who chooses not to call a witness within its exclusive power to produce. See *United States v. Johnson,* 562 F.2d 515, 517 (8th Cir. 1977). Nor, in light of the discussion above, was petitioner entitled to such a charge by his allegations of the State's wrongful loss of contact with the witness.

2. Indeed, it has been said that

"when a defendant, years after his conviction, seeks habeas relief based on a trial judge's alleged abuse of discretion in not granting a continuance, the petitioner should at the very least be obligated to furnish an affidavit setting forth his efforts during the interim to obtain a statement from the missing witness ...." *Singleton v. Lefkowitz, supra,* 583 F.2d at 628–29 (Mansfield, J., dissenting). No account of such efforts appears in the record of this habeas petition.