Howard JACOBSON, Petitioner,

v.

Robert J. HENDERSON, Superintendent, Auburn Correctional Facility; Thomas A. Coughlin, III, Comm'r, Department of Correctional Services; and Robert Abrams, Atty. General, Respondents.

No. 83 Civ. 4108 (JMC).

United States District Court, S.D. New York.

July 25, 1984.

Ramsey Clark, Lawrence W. Schilling, New York City, counsel for petitioner.

Mario Merola, Dist. Atty., Bronx County, Steven R. Kartagener, Asst. Dist. Atty., New York City, for respondents.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

The petition of Howard Jacobson for a writ of habeas corpus is denied. 28 U.S.C. § 2254.

### FACTS

Petitioner is currently confined at Auburn Correctional Facility pursuant to a judgment of the New York Supreme Court, Bronx County (Kapelman, J.), upon a jury verdict convicting him of second degree murder. N.Y.Penal Law § 125.25[1] (McKinney 1975). Petitioner was sentenced to serve an indeterminate term of twenty-five years to life imprisonment.

Approximately eight months after the jury verdict, petitioner moved to vacate the judgment because of jury misconduct during deliberations. The motion to vacate the judgment was denied. *People v. Jacobson*, 109 Misc.2d 204, 440 N.Y.S.2d 458 (Bronx Co.Sup.Ct.1981). On appeal of the judgment of conviction and the order denying the motion to vacate the judgment, the Appellate Division, First Department, affirmed the judgment and order. *People v. Jacobson*, 89 A.D.2d 826, 452 N.Y.S.2d 473 (1st Dep't 1982). The Court of Appeals denied petitioner leave to appeal. *People v. Jacobson*, 57 N.Y.2d 781, 454 N.Y.S.2d 1057, 440 N.E.2d 1348 (1982).

Thereafter petitioner sought habeas relief from this Court, asserting that he was denied (1) a fair trial and the right to an impartial jury because of jury misconduct in violation of the fifth, sixth and fourteenth amendments; (2) a fair trial, his right to compulsory process in violation of the sixth amendment and due process in violation of the fourteenth amendment because the prosecution failed to produce George Miller, an alleged material witness; and (3) a fair trial in violation of the sixth and fourteenth amendments because of the

court's denial to permit Leonore Berg to testify.

Briefly, the facts relevant to the jury misconduct are: During deliberations heated colloquy occurred among the jurors: screaming, hysterical crying, fist banging and name calling.[1] Abusive language was used. One juror in particular, who basically "broke down",[2] threw a chair allegedly at another juror. That juror, an auxiliary policeman, stated he was sick and required medical assistance. When the chair was thrown, allegedly one of the jurors requested the court officer to inform the trial judge of the incidents occurring in the jury room but the court officer declined to do so unless a note was sent through the foreperson. Allegedly, the court officer was informed that everything was under control. The trial judge was not informed of the chair-throwing incident at that time.

Petitioner alleges that these acts were designed to coerce the jurors who favored acquittal to change their votes to guilty. The disturbing incidents were conveyed months after the verdict to the trial judge through affidavits of the jurors. It is further alleged that during deliberations one juror read from notes he had taken during the trial and that at one point, the jury was deadlocked and the foreperson would not so inform the trial court. At a later point in time, the trial judge was informed of a deadlock. Petitioner alleges that this conduct denied him a fair trial.

Judge Kapelman declined to consider the jurors' affidavits to determine if members of the jury were coerced into changing their votes from innocent to guilty. Three jurors' affidavits were taken. Allegedly, juror Michael Speller stated to the Government that his affidavit was replete with inaccuracies.[3] He would, however, not swear to another affidavit for the Government. Speller's affidavit was sworn three weeks after the verdict at the request of Jacobson's paramour with whom he had taken flight following his conviction.

Jacobson's counsel had obtained the affidavits of jurors Bernice Foust on May 30, 1980 and Rose Kovnit on November 6, 1980. When the Government investigated the circumstances under which these affidavits were given, the two jurors informed them that the affidavits were accurate.

*Failure to Produce George Miller*

As a defense, Jacobson contended at trial that Tupper's narcotic coconspirators murdered Tupper. Jacobson contended that Miller was the only one, other than Tupper's coconspirators, who could testify about Tupper's involvement with drug traffic. Petitioner further asserts that it was incumbent on the Government to produce Miller or inform petitioner of Miller's whereabouts.

Miller had testified as a confidential informant in a federal narcotics case in the Eastern District of New York in which Tupper was named as an unindicted coconspirator. He testified in the Eastern District case prior to petitioner's trial. Jacobson unsuccessfully tried to subpoena Miller by serving the subpoena on the Assistant United States Attorney ["Assistant"] who represented the Government in the Eastern District case. The Assistant refused service since Miller was no longer working with the Government and had returned to private life. The Assistant stated that he would contact Miller to inquire if he would appear voluntarily. He then testified at petitioner's trial that although he had a current address for Miller, he was unable to contact him. Furthermore, neither the District Attorney nor the trial judge knew of Miller's whereabouts. Defense counsel told the trial court that a journalist had informed him that Miller could not be located. The trial court encouraged defense counsel to determine Miller's availability. The record does not indicate that Jacobson

---

1. *See* Petitioner's Exhibit A In Support of Petition for Writ of Habeas Corpus at 10–12 (filed July 19, 1984) [hereinafter "Petitioner's Exh. A"].

2. *Id.* at 14.

3. *See id.* at 45.

sought a court order directing the Assistant or anyone else to produce Miller.

*Testimony of Leonore Berg*

Petitioner claims constitutional error by the trial court's denial of Berg's testimony as collateral. At trial, David Silbergeld testified that Melanie Cain told him petitioner "had nothing to do with Tupper's murder."[4] Berg notarized Silbergeld's signature on an affidavit in which Silbergeld swore that Cain had stated this to him. Cain denied having made the statement to Silbergeld and he testified that the affidavit to which he swore before Berg was not the one introduced at trial because it was not on legal sized paper. The affidavit offered into evidence was one third the size of legal sized paper.[5] Petitioner alleges he sought to introduce Berg's testimony to authenticate Silbergeld's affidavit. The respondent contends it was sought to be admitted to impeach Silbergeld's testimony which would impeach Cain's testimony.

The Court ruled that Berg's testimony which would allegedly impeach the testimony of an impeachment witness by admitting extrinsic evidence was collateral and denied any testimony from Berg.[6]

## DISCUSSION

Initially, the Court must determine whether petitioner has exhausted his state court remedies. *See* 28 U.S.C. § 2254(b), (c); *Petrucelli v. Coombe*, 735 F.2d 684 at 687 (2d Cir.1984). With respect to petitioner's claims concerning jury misconduct, nonproduction of Miller and exclusion of Berg's testimony, there is no dispute that these alleged constitutional claims have been exhausted. The Court agrees.

Because it is necessary that the petition contain only exhausted claims for a federal court to consider the petition's constitutional merit, the Court addresses the issue raised by respondent that if petitioner is alleging that the denial of a hearing by Judge Kapelman on the jury misconduct claim constitutes a constitutional violation of petitioner's rights, then the petition must be dismissed in its entirety because petitioner did not present the claim to the state court and thereby has not exhausted this claim. *See Daye v. Attorney General of State of New York*, 696 F.2d 186, 190–91 (2d Cir.1982), *cert. denied*, — U.S. —, 104 S.Ct. 723, 79 L.Ed.2d 184 (1983). While petitioner sought a hearing before the trial court *if* Judge Kapelman did not rule in petitioner's favor based on the jury's affidavits, respondent contends that petitioner waived his right to a hearing.[7] Petitioner stated on a number of occasions that he did not consider a hearing necessary because the affidavits would be sufficient to support a finding of jury misconduct that denied petitioner a fair trial.[8]

The Court finds that petitioner failed to argue to the state court that the denial of the hearing gave rise to a constitutional

---

**4.** *See* Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus at 32–33 (filed July 19, 1984).

**5.** David Silbergeld admitted that his signature appeared on the affidavit and that a handwritten note containing the same information but which was torn at the bottom, was also written by him. The jury heard Silbergeld testify that Cain had told him that "Buddy had nothing to do with Jack's death." They also heard Melanie Cain deny that she made those statements.

**6.** *See* Respondents' Memorandum of Law at 43 (filed Nov. 16, 1983).

**7.** Relying on *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Government argues that petitioner may not raise the issue of a hearing before this Court because he failed to raise the issue below. If the Government is arguing that petitioner waived this claim and is procedurally barred from raising it in federal court, then petitioner would be required to show cause and prejudice for failure to raise this claim in state court. *See Matthews v. Scully*, 579 F.Supp. 1, 8 (S.D.N.Y.1984). Neither prong of the test has been established.

It has not been argued that petitioner waived his hearing claim, thereby satisfying the exhaustion doctrine. *See Engle v. Isaac*, 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982); *Jones v. Henderson*, 580 F.Supp. 273, 276 (E.D.N.Y.1984).

**8.** At oral argument on the writ of habeas corpus before this Court on April 9, 1984, petitioner's counsel strenuously stated that he had never waived the right to a hearing and in fact, seeks a new trial or a hearing at this time.

claim.[9] Indeed, in petitioner's papers to this Court, there is no claim that the denial of the hearing violated petitioner's constitutional rights. Petitioner merely argues that he has not waived his right to a hearing. Once Judge Kapelman denied petitioner's motion to vacate the judgment because of jury misconduct, there is no indication that petitioner then sought a hearing on the issues. Likewise, petitioner did not raise this issue on appeal.[10]

Petitioner's brief to the Appellate Division states in general terms that testimony should be received when the jury's verdict has been improperly influenced.[11] He then refers to cases in which hearings have been held following a trial. No constitutional argument is presented in these cases. Therefore, even broadly construing petitioner's papers submitted to the state courts, petitioner did not alert the state court to constitutional considerations involved in the denial of the hearing. *See Daye v. Attorney General of the State of New York, supra,* 696 at 194. Thus, if the Court were to assume *arguendo* that petitioner is raising in this writ a constitutional violation by the denial of the hearing,[12] the Court would be constrained to find that the claims have not all been exhausted. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Because petitioner has failed to raise this issue as a constitutional violation of petitioner's rights to this Court or the state courts, the issue need not be addressed. Furthermore, the Court construes petitioner's request for a hearing as a remedy to be granted if the Court finds that petitioner may have been denied a fair hearing.

*Jury Misconduct*

Generally, courts are reluctant to impeach a jury verdict by affidavits or post-verdict examination unless extraneous influence invaded the jury room which prejudiced the defendant, thereby denying him a fair trial.[13] *See United States v. Brasco,* 385 F.Supp. 966, 968 (S.D.N.Y.1974), *aff'd,* 516 F.2d 816 (2d Cir.), *cert. denied,* 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975). Judge Friendly has interpreted New York precedent to encompass jury misconduct in the definition of "extraneous influence". *See United States ex rel. Owen v. McMann,* 435 F.2d 813, 819–20 (2d Cir. 1970), *cert. denied,* 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971). Testimony of jury misconduct may concern facts involved that describe the extraneous influence but may not include "how far that influence operated upon his mind". *Id.* (quoting *Mattox v. United States,* 146 U.S.

---

9. This issue was not raised in opposing counsel's papers below, other than a mere mention that petitioner did not seek a hearing before Judge Kapelman and does not seek a hearing before the Appellate Division. *See* Respondents' Exhibits, at 89 (filed July 25, 1984) [hereinafter "Respondents' Exhs."] This argument as illustrated by the facts set forth in the text, *infra* at 507, is not totally accurate because petitioner argued before Judge Kapelman that if he did not rule in petitioner's favor then a hearing would be necessary. *See* Respondents' Exhs. at 28, 41, 52, 59.

Respondent further argues that the unjustified delay in requesting consideration of the affidavits by the trial court or a hearing militates against the request. While the Court agrees that memories are not as reliable months after a trial, and that permitting an investigation instigates jury harassment, the delay alone would not necessarily justify the denial of the relief sought.

10. Even assuming *arguendo* that by the mere mention of cases which granted the request for a hearing, *see* Respondents' Exhs. Exh. 2 at 26, petitioner is deemed to have raised this issue on appeal to the Appellate Division, thereby exhausting his state court remedies, the allegations in the affidavits do not warrant a hearing.

11. *See id.* at 26–27.

12. The Court is cognizant that the denial of a hearing under certain circumstances may give rise to a due process violation. *See Sullivan v. Fogg,* 613 F.2d 465, 466–68 (2d Cir.1980). It is within the Court's discretion to grant a hearing. *See United States v. Diez,* 736 F.2d 840 at 845–46 (2d Cir.1984).

13. The policy behind this rule is to avoid jury harassment, inhibition of jury deliberations and jury tampering. *See King v. United States,* 576 F.2d 432 (2d Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978); *United States v. Dioguardi,* 492 F.2d 70, 79–80 (2d Cir.), *cert. denied,* 419 U.S. 829, 95 S.Ct. 49, 42 L.Ed.2d 53 (1974).

140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892)). Mindful of these considerations, the Court addresses petitioner's claims.

Petitioner argues that he was denied the right to an impartial jury and a fair trial in violation of the due process clause of the fourteenth amendment because of the jury incidents. Petitioner further argues that Judge Kapelman erroneously determined that the affidavits of jurors could not be admitted to impeach their verdict. *But see* Fed.R.Evid., 606(b); *United States v. Beltempo*, 675 F.2d 472, 481 (2d Cir.), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2963, 73 L.Ed.2d 1353 (1982). Because the Court determines that the jury misconduct either viewed separately or collectively did not violate petitioner's constitutional rights, it finds that it was not reversible error for the trial court to decide that the jury could not impeach its verdict with affidavits.

■■■ The affidavits indicate that vituperative arguments occurred in the jury room accompanied by screaming, name calling, fist slamming and the use of obscenities. While the Court does not encourage this conduct, such behavior does not give rise to a claim of constitutional dimension. One juror, who broke down crying and indicated that he was sick and needed to see a doctor,[14] worsened the atmosphere by his argumentative attitude and further, by throwing a chair that landed a few feet from another juror.

Judge Kapelman determined that the chair was not thrown at anyone in particular, apparently based on facts culled from affidavits. Factual findings by the trial court are generally presumed to be correct. *Beesley v. Smith*, 582 F.Supp. 727, 732 (S.D.N.Y.1984). Because this finding did not hinge on a determination of credibility following a hearing, this Court is equally able to evaluate the facts as the trial court. If the affidavits are taken as true, the chair

may have been thrown at someone but it is disputed at whom. Whether or not the chair was thrown at a juror, the Court is disturbed by this conduct.

The situation was further complicated by the fact that the bailiff heard noise in the jury room, asked the foreperson what was going on, and allegedly was informed that matters were under control. The foreperson also informed the trial judge that the jury was deadlocked on Thursday night but allegedly refused to inform the trial judge of a deadlock on subsequent occasions before the jury rendered a verdict on the following Saturday.[15]

Judge Kapelman, having reviewed the facts set forth in the jury affidavits, determined that the affidavits could not impeach the jury's verdict. The Court is mindful that when violence is employed to coerce a jury verdict, affidavits may be the only available means to demonstrate that such influence was improperly used. *See United States ex rel. Owen v. McMann, supra,* 435 F.2d at 819–20. While it is a close question whether the conduct alleged denied petitioner the right to a fair trial, the Court finds that any error was harmless. *See generally Barber v. Scully*, 731 F.2d 1073 at 1075 (2d Cir.1984).

The circumstances under which the affidavits were taken do not support a finding of reliability. One juror indicated to Detective Alan Brenner that his affidavit was inaccurate and misleading.[16] While the other two affiants stated that their affidavits were true and accurate, they were taken as a result of an investigation by petitioner's counsel. "This type of unsupervised inquiry is neither approved of nor condoned by this Court." *United States v. Brasco, supra,* 385 F.Supp. at 970 n. 5. Clearly "all post-trial questioning of jurors must only be conducted under the strict

---

**14.** Although it was revealed at voir dire that three jurors were former or existing auxiliary police officers, including the juror who claimed he needed to see a physician, neither of the trial attorneys challenged these jurors and, therefore, may not challenge their service before this Court. *See* Respondents' Verified Answer,

¶¶ 71–74 (filed Nov. 16, 1983); Petitioner's Exh. A at 72.

**15.** *See* Respondents' Answer, ¶ 30.

**16.** *See* Petitioner's Exh. A at 45.

supervision and control of the court, with the inquiry restricted to those matters found by the court as both relevant and proper." *Id.; see United States v. Balistrieri,* 577 F.Supp. 1532, 1549–51 (E.D.Wis. 1984). *King v. United States,* 576 F.2d 432, 438 (2d Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 155, 58 L.Ed.2d 154 (1978).

In this regard, the Court notes that the trial court determined that after the chair was thrown, deliberations continued and the jury requested readbacks of testimony on two occasions. Moreover, the jury was polled and each juror rendered a verdict of guilty.[17]

Generally, jurors' affidavits may not be employed to explain what happened in the jury room or why but only to state objective facts. *See People v. DeLucia,* 20 N.Y.2d 275, 279, 229 N.E.2d 211, 214, 282 N.Y.S.2d 526, 530 (1967) (illegal view). Because the trial court properly determined that jurors' affidavits are inadmissible as evidence of their states of mind, a hearing was not necessary. *See People v. Foti,* 99 A.D.2d 517, 518, 470 N.Y.S.2d 689, 690 (2d Dep't 1984); *People v. Rhodes,* 92 A.D.2d 744, 746, 461 N.Y.S.2d 81, 83 (4th Dep't 1983). In view of the foregoing and recognizing the flexibility afforded due process claims, *see Augustin v. Sava,* 735 F.2d 32 at 37 (2d Cir.1984), the Court finds that petitioner was not denied the right to a fair trial. *See generally Johnson v. Scully,* 727 F.2d 222 at 227 (2d Cir.1984).

*Exclusion of Berg's Testimony*

Petitioner argues that he sought to introduce Berg's testimony to authenticate the copy of Silbergeld's affidavit. Silbergeld testified that the original affidavit explained the context in which Cain stated that petitioner "had nothing to do with the murder" and that the copy did not.[18] Allegedly, Cain's statements were made in a hypothetical context. Silbergeld acknowledges that it was his signature on the affidavit but testified that the statements therein were not framed in the context in which they were made. Because the petitioner failed to produce the original and because the trial court determined that the testimony of Berg to impeach Silbergeld, an impeaching witness of Cain was collateral, the trial court denied petitioner's request to admit Silbergeld's affidavit.

Petitioner claims this ruling denied him his constitutional rights, relying on *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1972).[19] Unlike *Chambers v. Mississippi, id.,* petitioner was afforded the opportunity to cross-examine Silbergeld, which he did extensively.[20] Furthermore, the Court notes that not every exclusion of testimony is a violation of the accused's right to due process. *See Wilkerson v. Turner,* 693 F.2d 121, 124 (11th Cir.1982). Indeed, an evidentiary ruling which does not give rise to a constitutional claim will be upheld unless there was an abuse of discretion. *See Petrucelli v. Coombe, supra,* at 690. In addition, while the affidavit was inadmissible, Silbergeld did testify that Cain made the statements, so Cain's testimony was indeed impeached. *See Chambers v. Mississippi, supra,* 410 U.S. at 299–301, 93 S.Ct. at 1047–1048. Considering the excludable testimony of Berg in light of the entire record, the Court finds that .any error was harmless and that petitioner was not denied a fair trial. *See Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983);

---

**17.** *See id.* at 37–39.

**18.** Silbergeld testified that the copy offered into evidence was on a shorter piece of paper than the original had been.

**19.** Unlike *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1972), the excluded testimony in the instant case did not consist of a confession to the crime nor was the affidavit as reliable as it was in *Chambers v. Mississippi,* *supra,* even if Berg would have testified as to its authenticity. *See Grochulski v. Henderson,* 637 F.2d 50, 55–56 (2d Cir.1980).

**20.** The Supreme Court stated that *Chambers v. Mississippi, supra,* was limited to the facts and circumstances in that case. 410 U.S. at 303, 93 S.Ct. at 1049. It also involved testimony that was damaging to defendant. *Id.; see Welcome v. Vincent,* 549 F.2d 853, 858 (2d Cir.1977).

*Reese v. Bara*, 479 F.Supp. 651, 656 (S.D.N.Y.1979). Accordingly, petitioner's application is denied.

## Production of Miller

 Petitioner argues that his sixth amendment right to compulsory process was violated by the trial court's failure to compel the District Attorney or the Assistant to produce Miller. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 872, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982). Initially, the Court notes that petitioner has failed to indicate when in the record he sought a court order directing Miller's production. It is undisputed that petitioner attempted to serve Miller through the Assistant who would not accept service because Miller was no longer under the control of the federal government.

Mindful that petitioner failed to seek a court order directing production of Miller and did not seek to produce Miller through information he may have received from the journalist about Miller being unavailable, it is possible that Miller was available to defense counsel through means other than the Government.[21] *See Boyd v. LeFevre*, 519 F.Supp. 629, 635–36 (E.D.N.Y.1981).

As the court noted in *People v. Tayeh*, 96 A.D.2d 1045, 1046, 466 N.Y.S.2d 458, 460 (2d Dep't 1983), Miller would not be considered a confidential informant as his name, although not his address, was disclosed to petitioner and the Assistant testified that he did not know Miller's whereabouts. The Assistant did all that he was required to do.[22] *See Boyd v. LeFevre, supra*, 519 F.Supp. at 635–36; *People v.*

*Dillard*, 96 A.D.2d 112, 115, 468 N.Y.S.2d 259, 263 (4th Dep't 1983).

Unlike the informant in *People v. Jenkins*, 41 N.Y.2d 307, 360 N.E.2d 1288, 392 N.Y.S.2d 587 (1977), Miller was not the informant in petitioner's case, but was the former informant in a federal case involving Tupper as well as other unindicted co-conspirators. Although Miller was no longer under the control of the federal government, reasonable efforts to locate him were made and there is no evidence that the government acted in bad faith to render Miller unavailable.[23] *See id.*, 41 N.Y.2d at 310–11, 360 N.E.2d at 1292–93, 392 N.Y.S.2d at 588–89. Furthermore, the petitioner must "demonstrate that the proposed testimony of the informant would tend to be exculpatory or would create a reasonable doubt as to the reliability of the prosecution's case either through direct examination or impeachment." *Id. See generally Cousart v. Hammock*, 580 F.Supp. 259, 269 (E.D.N.Y.1984). To compel Miller's production, defendant must show that his testimony would be relevant and material. *See United States v. Valenzuela-Bernal, supra*, 458 U.S. at 873–74, 102 S.Ct. at 3449–50; *People v. Goggins*, 34 N.Y.2d 163, 170, 313 N.E.2d 41, 44, 356 N.Y.S.2d 571, 575 (1974). Finally, while petitioner established that Miller's testimony was relevant, the absence of Miller's testimony did not unduly prejudice petitioner. Reasonable efforts were made to secure his production. *See Boyd v. LeFevre, supra*, 519 F.Supp. at 635–36. Accordingly, in view of the overwhelming evidence of defendant's guilt, it cannot be determined that petitioner was deprived a fair trial.[24]

---

**21.** Judge Kapelman indicated that he would admit Miller's testimony out of order if Miller were produced at a later point in time. *See generally Singleton v. Lefkowitz*, 583 F.2d 618, 621 (2d Cir.1978).

**22.** The Court notes that when the trial court stated in passing that it did not have the power to direct the Government to produce Miller, petitioner has not given any indication that he objected to the Court's conclusion. Furthermore, the Court notes this is not a suppression of evidence situation. *See United States v.*

*Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976).

**23.** *See People v. Price*, 100 Misc.2d 372, 378, 419 N.Y.S.2d 415, 422 (Sup.Ct.Bronx County 1979) ("[T]here is no obligation on the prosecution to gather evidence from third parties which may be exculpatory but is unavailable to the prosecution and beyond the power to obtain.")

**24.** While the Court requested the transcript of petitioner's trial more than a month ago, through no fault of the parties, it has not been

## CONCLUSION

Accordingly, petitioner's application for a writ of habeas corpus is denied. 28 U.S.C. § 2254.

The Clerk of the Court is directed to dismiss the Complaint.

SO ORDERED.

supplied to the Court. Hence, the Court has had to rely on the parties' briefs and affidavits.