**UNITED STATES of America,**

v.

**Omar MILLER, Defendant.**

**15-CR-580 (WFK)**

United States District Court,
E.D. New York.

Signed August 23, 2016

302

Andrew C. Gilman, Ian Craig Richardson, U.S. Attorneys Office, Eastern District of New York, Brooklyn, NY, for United States of America.

Allegra W. Glashausser, Kannan Sundaram, Federal Defenders of New York, Brooklyn, NY, for Defendant.

### DECISION & ORDER

WILLIAM F. KUNTZ, II, United States District Judge:

This criminal action involves Defendant Omar Miller ("Defendant"), a Jamaican citizen and national, who is charged with one count of visa fraud in violation of 18 U.S.C. § 1546(a). *See* Indictment, ECF No. 15. Defendant procured an O-2 nonimmigrant visa in 2012 after submitting a visa application, in which he stated that he had never been "arrested or convicted for any offense or crime" and that he had never gone by "other names." The Government contends, however, that Defendant was arrested by the Jamaican Constabulary Force for "shooting with intent" in 1996 and 2010, and that Defendant used the name "Andy Fowl" when serving as a member of the "Scare Dem Crew" gang. On February 7, 2013, Defendant presented his O-2 visa to United States Customs and Border Protection officers at John F. Kennedy International Airport in Queens, New York, and was permitted to enter the United States. Defendant was arrested on July 17, 2015 in Pennsylvania.

■ Trial in this action began on August 22, 2016. On the first day of trial, the Court conducted *voir dire*. In the Second Circuit, "trial courts are generally accorded great discretion in conducting voir dire; and a criminal defendant's due process rights will only be violated by procedures that are fundamentally unfair." *Boyd v. LeFevre*, 519 F.Supp. 629, 634 (E.D.N.Y. 1981) (Naeher, J.) (citing *Rosales–Lopez v. United States*, 451 U.S. 182, 189, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981) and *United States v. Gibbons*, 602 F.2d 1044, 1051 (2d Cir.1979)). Here, the Court asked general questions, and followed up by calling each and every potential juror to the sidebar for further questioning on the record. If counsel wished for the Court to ask additional questions, counsel had the opportunity and, in many instances, did in fact ask the Court to question further. Where appropriate, the Court did so. The Court's *voir dire* process took approximately five hours, beginning around 10:00 A.M. and ending after 3:00 P.M., without lunch and with a single ten minute break. The Court ultimately selected 42 potential jurors out of a pool of 110 potential jurors, thereby striking 68 potential jurors for cause.

The Court then permitted the parties approximately half an hour to review the remaining 42 potential jurors and discuss the exercise of their peremptory challenges with their respective co-counsel and clients. After the parties had conducted their review for approximately twenty-five minutes, the Court asked the parties how much longer they needed. The Government stated that they were ready; the Defense requested five more minutes, which the Court granted.

The Court permitted the Government to exercise six peremptory challenges and two peremptory alternate challenges, and the Defense to exercise ten peremptory challenges and two peremptory alternate

challenges. After the Government exercised five of their eight peremptory challenges, the Defense brought a *Batson* challenge. The Court reserved on the challenge until after all peremptory challenges were made.

After the Defense counsel raised the *Batson* challenge, the parties continued exercising their peremptory strikes. The Government's peremptory strikes included two black male, one black female, and five white persons. Both parties ultimately exercised all of their peremptory challenges. The Court conducted a hearing on the Defense's *Batson* challenge at the sidebar outside of the presence of the potential jurors after both parties exercised all of their peremptory challenges. After hearing the parties' arguments, the Court dismissed the *Batson* challenge, finding that the Government's peremptory challenges were not made on the basis of race.

The Court ultimately empaneled sixteen jurors for the trial in this action.

■ On August 22, 2016, the Defense moved this Court to "dismiss the current jury and empanel a new one." Def. Letter at 2, ECF No. 59 ("Letter"). The Defense argued that the Court failed to ask questions sufficient for the Defense to exercise its peremptory challenges meaningfully.[1] Specifically, the Defense argued that the Court did not ask the "standard general questions" to the potential jurors, such as their employment, family, and the newspapers they read. Letter at 2. The Court notes, however, that the Defense did not provide Court with any reasoning for requiring such questions to be asked. The Court holds, further, that the Court's choice of questions and its conduct of *voir*

*dire* was properly conducted within the bounds of its "great discretion in conducting voir dire," *see Boyd*, 519 F.Supp. at 634, and that its procedures did not rise to the level of being "fundamentally unfair," *see id.*

Furthermore, the Defense cites to only one case in the Second Circuit, *United States v. Gibbons*, 602 F.2d 1044, 1051 (2d Cir.1979), in support of its position that that the Court's "*voir dire* was . . . inadequate." Def. Letter at 2. The Court finds that *Gibbons*, however, does not support the Defense's position. Rather, the Second Circuit held that the parties' right to exercise peremptory challenges "can hardly mean that every question suggested by counsel must be put by the trial judge because it might conceivably lead to a peremptory challenge." *Gibbons*, 602 F.2d at 1051; *see also id.* at 1051 ("In sum, the right of the peremptory challenge does not command a right to the peremptory question. Whatever the attorney's power to strike a number of venirepersons at will may be, to recognize a correlative right to question at will without in any way identifying the motivating concern would strip the judge of his control over the proceedings. Any question could be labelled necessary for some unspoken element in the decision to challenge peremptorily.")

Finally, the Defense argues that "the court did not permit counsel to make cause challenges, object to the court's challenges, or ask any follow up questions." Letter at 2. This assertion is incorrect. The Court permitted the parties to ask questions to the Court outside the presence of the potential jurors. The Court considered and

---

1. For reasons known only to defense counsel, Mr. Sundaram, the Defense attempted to strike juror number 84 twice. After the Court informed the Defense of the potential jurors it had already struck, the Defense ultimately elected to strike juror number 100, an individual outside of the range of the potential sixteen jurors. If the Defense is truly arguing that it did not have an opportunity to exercise its peremptory strikes meaningfully, then it is odd that it would elect to use a peremptory in a truly meaningless fashion.

addressed these requests as needed and when they were raised.

Accordingly, the Court finds that Defendant's rights were not violated during the *voir dire* process, and DENIES the Defense's motion.

**SO ORDERED.**